UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

-vs-                                      REPORT AND RECOMMENDATION
                                         21-CR-6108-FPG-MJP-1

JI WANG,

                    Defendant.

———————————————————————

## APPEARANCES

For the United States:              Melissa M. Marangola, AUSA
                                    U.S. Attorney's Office - Rochester
                                    100 State Street
                                    Rochester, NY 14614

                                    Stephen J. Marzen, AUSA
                                    U.S. Department of Justice
                                    950 Pennsylvania Avenue, NW
                                    Suite 7746
                                    Washington, DC 20530

For the Defendant:                  David C. Pilato, Esq.
                                    Pilato Law
                                    30 West Broad Street
                                    Suite 306
                                    Rochester, NY 14614

                                    Bradley L Henry, Esq.
                                    Blank Rome LLP
                                    1271 Avenue of the Americas
                                    New York, NY 10020

## REPORT AND RECOMMENDATION

## INTRODUCTION

**Pedersen, M.J.** This case is before the undersigned on an omnibus motion filed by defendant Ji Wang (hereinafter "Defendant") (Omnibus Motion, Nov. 20, 2023, ECF No. 63.) After hearing oral argument and issuing an Order regarding Defendant's motions, the undersigned reserved on the following, which are addressed herein:

(1) Suppression and exclusion of evidence obtained following the alleged illegal search and seizure of Defendant's property pursuant to the Fourth Amendment, or, in the alternative, a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to determine the same;

(2) Suppression and exclusion of evidence obtained during alleged illegal custodial interrogations pursuant to the Fifth Amendment and *Miranda*, or, in the alternative, for an evidentiary hearing to determine the same; and

(3) Dismissal of Counts One, Two, Five, Six, and Seven of the Indictment for insufficiency.

(Def.'s Not. of Mot., ECF No. 63.)

For the reasons set forth below, the undersigned recommends that the District Judge deny Defendant's motion to suppress tangible evidence and request for a *Franks* hearing, his motion to suppress statements and request for a hearing related thereto, and his motion seeking dismissal of Counts One, Two, Five, Six, and Seven of the Indictment.

2

## PROCEDURAL BACKGROUND

The government indicted Defendant on June 24, 2021, on ten Counts as follows:

(1) Economic Espionage–Copying–18 U.S.C. § 1831(a)(2);

(2) Theft of Trade Secrets–Copying–18 U.S.C. § 1832(a)(2);

(3) Economic Espionage–Possessing–18 U.S.C. § 183l(a)(3);

(4) Theft of Trade Secrets–Possessing–18 U.S.C. § 1832(a)(3);

(5) Economic Espionage–Attempt–18 U.S.C. § 1831(a)(4);

(6) Theft of Trade Secrets–China Attempt–18 U.S.C. § 1832(a)(4);

(7) Theft of Trade Secrets–Venture Capital Attempt–18 U.S.C. § 1832(a)(4);

(8) International Emergency Economic Powers Act (July 2017 to August 2017);

(9) International Emergency Economic Powers Act (October 2017 to November 2017); and

(10) International Emergency Economic Powers Act–Attempt.

(Indictment, Jun. 24, 2024, ECF No. 1.)

Defendant filed his omnibus motion on November 20, 2023. (ECF No. 63.) The government filed its opposition on January 22, 2024. (ECF No. 68.) The undersigned heard oral argument on February 8, 2024, and thereafter issued an Omnibus Order granting Defendant's motion for leave to file additional motions to the extent Defendant could not have made those motions at the time he filed his omnibus motion and reserving on the issues addressed herein. (ECF No. 71.)

## STANDARD OF LAW

The Honorable Frank P. Geraci, Jr. referred this matter to the undersigned to address "[a]ll pre-trial matters . . . including all pre-trial matters that a Magistrate

Judge may hear and determine pursuant to 28 U.S.C. Section 636(b)(1)(A), and those

which a Magistrate Judge may hear and thereafter file a report and recommendation

for disposition pursuant to Section 636(b)(1)(B). All procedural aspects of matters

properly before the Magistrate Judge under this Order, including scheduling and the

filing of briefs or other supporting material, shall be determined by the Magistrate

Judge." (Text Order of Referral, ECF No. 4.)

**DISCUSSION**

Defendant was employed by Corning, Inc. ("Corning") from 1998 to 2019. (Def.'s

Decl. ¶ 3, Nov. 20, 2023, ECF No. 63-10; Indictment ¶ 3, ECF No. 1.) From

approximately 2002 to 2009, he worked as the lead scientist on a fiber laser research

and development project initiated by the Defense Advanced Research Projects Agency

("DARPA"). (Def.'s Decl. ¶ 3; Indictment ¶¶ 4 & 5.) The purpose of the DARPA project

was to "produce laser fibers that could be weaponized and used to combat threats

posed by drones." (Indictment ¶ 4.) The Indictment provides:

> The DARPA project led to a substantial body of valuable business,
> scientific, engineering, and technical information relating to the
> development, production, and manufacture of high-power specialty
> optical fibers (collectively, the "DARPA Laser Fiber Manufacturing
> Technology"). The DARPA Laser Fiber Manufacturing Technology
> consisted of the unpublished methods, techniques, processes, and
> procedures, successful and unsuccessful, used to develop and
> manufacture optical fibers, and included detailed information related to
> equipment, settings, process details, specific conditions, materials,
> parameters and techniques for glass soot deposition, glass consolidation,
> and vapor phase doping, as well as contemporaneous sensor
> measurements taken during the manufacturing processes, and test
> results and performance characteristics of specific optical fiber "recipes"
> and compositions to achieve fiber refractive index profiles and designs
> that were conceived, developed and produced in the DARPA project.

(*Id.* at ¶ 7.)

"The DARPA Laser Fiber Manufacturing Technology was propriety to and owned by Corning." (*Id.* ¶ 8.) Corning took reasonable measures to protect the DARPA Laser Fiber Manufacturing Technology from unauthorized use and disclosure, in relevant part, by requiring employees to sign agreements "prohibiting the disclosure and use of proprietary information, except in the course of their official work duties" and training employees, including Defendant, about "the protection and confidentiality of sensitive/proprietary/trade secret information, as well as export-controlled technology." (*Id.* ¶ 10(b).)

The Indictment alleges that from in or around 2014 to 2017 Defendant and another individual attempted to surreptitiously establish a fiber laser business in the People's Republic of China and "contacted and negotiated with the People's Republic of China and its instrumentalities and agents," with a potential large financial benefit to Defendant. (*Id.* ¶¶ 14,15, & 18.) Defendant traveled to the People's Republic of China several times between December 2014 and August 2018 for the purpose of meeting with the Chinese to negotiate. (*Id.* ¶ 19.) Defendant brought his laptop, which "contained technology pertaining to the DARPA project that was controlled for export to China for national security reasons." (*Id.* ¶ 20.)

The Indictment further alleges that "on or about July 1, 2016, without authorization, [Defendant] downloaded a copy of a folder containing DARPA project files, including the DARPA Laser Fiber Manufacturing Technology Files, from Corning's network to a personal USB drive." (*Id.* ¶ 24.) Defendant downloaded that

information to use in his own business, QuantumWave, for developing laser fibers. (*Id*. ¶ 25.) Defendant "had no need related to the DARPA project or his employment at Corning to access the DARPA project folder, and no business reason to copy the DARPA Laser Fiber Manufacturing Technology Files onto a removable personal digital storage device." (*Id*. ¶ 26.)

### *Findings of Fact Regarding Defendant's Motion To Suppress Evidence Obtained from the Search Warrants and for a Franks Hearing.*

Defendant seeks suppression of evidence obtained pursuant to four search warrants on the basis that they lacked probable cause when issued. The search warrants include:

(1) Search warrant regarding jwang14870@gmail.com, dated December 1, 2017;

(2) Search warrant regarding jiwang@stny.rr.com, dated December 1, 2017;

(3) Search warrant regarding Defendant's Corning-issued iPhone, dated March 19, 2018; and

(4) Search warrant regarding Defendant's personal iPad mini, dated November 2, 2018.

(Henry Decl. ¶ 3, Nov. 20, 2023, ECF No. 63-2; Def.'s Mem. of Law at 3, ECF No. 63-1.) Defendant asserts that the search warrant affidavits for all four warrants "are largely identical in terms of the factual assertions made within them." (Def.'s Mem. of Law at 3.)

Defendant contends that "[t]he search warrants were issued on the basis of materially misleading affidavits," and that, therefore, the evidence obtained from

them should not be admitted against Defendant at trial. (*Id.*) Defendant further contends that "[t]he search warrant affidavits [ ] also contain misrepresentations and omissions, the absence of which would destroy probable cause." (*Id.* at 4.) For these reasons Defendant contends that any evidence resulting from the search warrants should be suppressed and/or that he is entitled to a *Franks* hearing. (*Id.* at 7.)

Defendant asserts that the following constituted the misrepresentations and omissions:

(1) "Around the time of [Mr. Wang's] travels to China, Wang accessed certain trade secret and export-controlled technical data.";

(2) "[T]he files at issue show a last modification date that precedes the download date of July 1, 2016, but omit the fact that many of the files had last modification dates from the early 2000s.";

(3) The search warrant affidavits assert that "on May 15, 2017 (two months before [Defendant's] scheduled trip to Beijing to attend a conference and see his ill father), Mr. Wang connected a USB thumb drive to his company-issued laptop and attempted to save (unspecified) files . . . They note that [ ] he was unsuccessful because Corning had changed company policy preventing access. But, they do not mention that Corning specifically approved an exception to their policy for Mr. Wang the same day.";

(4) "[T]he government still does not allege that Mr. Wang downloaded any trade secrets on May 15, 2017 in advance of his July trip to China."

(5) "[O]n July 14, 2017, Mr. Wang requested a larger hard drive for his company issued laptop, a request which was completed on August 14."; and

(6) "[T]he affidavits omit the fact that Mr. Wang traveled to Beijing on July 15, 2017 and returned to the United States on August 4, 2017, and Corning IT forensics and an FBI affidavit confirm that Wang did not access the Corning network or even turn on his computer during his July/August 2017 trip to Beijing."

(*Id*. at 5–6.) As addressed below, the undersigned recommends that the District Judge deny this portion of Defendant's motion.

### *"Around the time of [Mr. Wang's] travels to China, Wang accessed certain trade secret and export-controlled technical data"*

With respect to the first alleged misrepresentation, Defendant asserts that the "vague framing of the phrase 'around the time of his travels' is meant to mislead the magistrate judge into thinking that Mr. Wang accessed the purported trade secrets shortly before or during his travels to China." (*Id*. at 5.) Defendant contends that he accessed the files in question on July 1, 2016, and thus not right before his trip, which occurred in October 2016. (*Id*.) Defendant asserts that the affidavits try to "draw a link between the file downloads and the trip to China" based solely on timing of the two events. (*Id*.)

The government argues that each search warrant affidavit contains the actual dates of Defendant's downloads and his trips to China. (Gov't Mem. of Law at 12, ECF No. 68.) More specifically, each affidavit contains the following language: "Around time of his travels to China, WANG accessed certain trade secrets and

export-controlled technical data. As explained below, certain of this information accessed by WANG related to projects on which WANG was not currently working . . . . According to records maintained by Corning, on July 1, 2016, WANG accessed his network profile and downloaded 116 file folders and sub-file folders onto a USB thumb drive." (Gov't Mem. of Law at 13; Zariczny Aff. ¶¶ 48–49, Decl. 1, 2017, ECF No. 63-3; Zariczny Aff. ¶¶ 48–49, Decl. 1, 2017, ECF No. 63-4; Zariczny Aff. ¶¶ 33 & 35 (adding ". . . and WANG had no apparent need to access this information in discharging his employment responsibilities at Corning" and including an intervening paragraph), Nov. 2. 2018, ECF No. 63-5; Valenzuela Aff. ¶¶ 33 & 35 (adding ". . . and WANG had no apparent need to access this information in discharging his employment responsibilities at Corning" and including an intervening paragraph), Nov. 2, 2018, ECF No. 63-6.)

> ***"[T]he files at issue show a last modification date that precedes the download date of July 1, 2016, but omit the fact that many of the files had last modification dates from the early 2000s."***

Defendant asserts that the search warrant affidavits were misleading because they failed to include that the last modification dates of the files he downloaded in July 2016 were from the early 2000's and that this "undermines the government's evidence of Mr. Wang's intent." (Def.'s Mem. of Law at 5.)

The government argues that including such information would only have bolstered the existence of probable cause to issue the warrants because it demonstrates that Defendant "downloaded years-old files for which he had no current Corning business" leading one to think that "he downloaded them for a non-Corning

business purpose—namely to sell them to the Chinese." (Gov't Mem. of Law at 13.) In addition, the government cites to two references contained in the search warrant affidavits indicating that "certain of the information accessed by WANG related to projects on which WANG was not currently working" (Zariczny Aff. ¶ 48, ECF No. 63-3; Zariczny Aff. ¶ 48, ECF No. 63-4; Zariczny Aff. ¶ 33 (adding "WANG had no apparent need to access this information in discharging his duties."), ECF No. 63-5; Valenzuela Aff. ¶ 33 (adding "WANG had no apparent need to access this information in discharging his duties."), ECF No. 63-6.)

> *The search warrant affidavits assert that "on May 15, 2017 (two months before [Defendant's] scheduled trip to Beijing to attend a conference and see his ill father), Mr. Wang connected a USB thumb drive to his company-issued laptop and attempted to save (unspecified) files . . . They note that [ ] he was unsuccessful because Corning had changed company policy preventing access. But, they do not mention that Corning specifically approved an exception to their policy for Mr. Wang the same day."*

Defendant contends that the search warrant affidavits misled the issuing magistrate judge as they indicate that Defendant attempted to download certain files from his work-issued laptop onto a thumb drive two months prior to one of his trips to China and was unsuccessful because Corning changed its policy to prevent such access. (Def.'s Mem. of Law at 5.) However, Defendant asserts that the search warrant affidavits omitted that, on that same day, Defendant obtained approval for an exception to the policy. (*Id.*) Defendant further asserts the search warrant affidavits do not "state what if any documents were saved . . . but implies that documents were taken as part of Mr. Wang's work on Quantum Wave." (*Id.*)

The government argues that since Corning was not aware that Defendant was downloading its trade secrets to pursue creating fiber-optic lasers in China, it is irrelevant whether Defendant obtained an exception to the policy prohibiting the connection of USB drives. (Gov't Mem. of Law at 14.)

> **"[T]he government still does not allege that Mr. Wang downloaded any trade secrets on May 15, 2017 in advance of his July trip to China."**

Defendant asserts that the search warrant affidavits omit any allegation that Defendant downloaded trade secrets on May 15, 2017, prior to his trip to China. (Def.'s Mem. of Law at 6.) In response, the government contends that "[t]he four search-warrant affidavits properly recorded actual events, not irrelevant non-events," and, therefore, "omitting the fact that Wang did not download any more files is hardly exculpatory in light of the affiants' recitation of the '116 file folders and sub-file folders' that Wang previously downloaded on July 1, 2016." (Gov't Mem. of Law at 14.) The government postures that Defendant "may already have copied and possessed all the files that he needed to make laser fibers in China" by May 15, 2017. (*Id*.)

> **"[O]n July 14, 2017, Mr. Wang requested a larger hard drive for his company issued laptop, a request which was completed on August 14."**

Defendant also contends that the search warrant affidavits omitted that he had been experiencing "ongoing IT issues" when he requested a larger hard drive for his computer on July 14, 2017. (Def.'s Mem. of Law at 6.) Defendant asserts that this request was not related to the "China project" as it was already "over" and that the omission was meant to "give the impression of impropriety." (*Id*.)

The government argues that the affiants' statements that "Defendant requested a larger hard drive on his Corning-issued laptop" and that "'[a] larger hard drive increases the capacity to store data, which would allow WANG to store more files on his laptop. Dkt. 63-3, at .pdf p. 40; Dkt. 63-4, at .pdf p. 35; Dkt. 63-5, at .pdf p. 28; Dkt. 63-6, at .pdf p. 31'" are true. (Def.'s Mem. of Law at 14.) The request was made the day prior to Defendant's trip to the People's Republic of China. (*Id.* at 14–15.) The government further asserts that Defendant did not provide any factual basis, particularly any facts of which the affiants were aware, "to suggest that the affidavits should have speculated as to potentially innocent explanations for the plainly suspicious conduct." (*Id.*)

> **"[T]he affidavits omit the fact that Mr. Wang traveled to Beijing on July 15, 2017 and returned to the United States on August 4, 2017, and Corning IT forensics and an FBI affidavit confirm [sic] that Wang did not access the Corning network or even turn on his computer during his July/August 2017 trip to Beijing."**

Lastly, Defendant contends that the search warrant affidavits omitted that he did not turn on his computer or access the Corning network when he traveled to Beijing, China from July 15, 2017 to August 4, 2017. (Def.'s Mem. of Law at 6.) Defendant further asserts that "[i]gnoring the fact that Mr. Wang did not power on his laptop . . . cannot be interpreted as anything other than trying to mislead the magistrate judge into believing that a crime had likely been committed." (*Id.*)

The government asserts that the affiants did, in fact, include this information in their search warrant affidavits citing to the following:

> On July 14, 2017, the day before his July 15, 2017 trip to Beijing, China, WANG requested from Corning an upgrade to a larger hard drive for his

company-issued laptop hard drive. Corning's IT office replaced his existing 128 Gigabyte hard drive with a 1 Terabyte hard drive on August 14, 2017. A larger hard drive increases the capacity to store data, which would allow WANG to store more files on his laptop. Prior to traveling on July 15, 2017, WANG requested permission from his Corning supervisor to attend a conference in China and to see his ill father. *WANG did not access the Corning network during this July trip, even though he brought his Corning issued laptop with him.*

(Gov't Mem. of Law at 15, citing Zariczny Aff. ¶ 56 , ECF No. 63-3; Zariczny Aff. ¶ 56, ECF No. 63-4; Zariczny Aff. ¶ 43, ECF No. 63-5; Valenzuela Aff. ¶ 43, ECF No. 63-6, *emphasis added*.)

### Legal Conclusions Regarding Defendant's Motion To Suppress Evidence Obtained from the Search Warrants and for a Franks Hearing.

"Ordinarily, a search carried out pursuant to a warrant is presumed valid. However, in certain circumstances, *Franks* permits a defendant to challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search and seizure." *United States v. Mandell*, 752 F.3d 544, 551–52 (2d Cir. 2014) (quotations and citation omitted). As explained by the Second Circuit:

> [T]o suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause [or necessity] finding.

*United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (quoting *United States v. Canfield*, 212 F.3d 713, 717–18 (2d Cir. 2000)).

The standard for entitlement to a *Franks* hearing is high, *see Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991), and requires a "substantial preliminary

showing" that a false statement was knowingly and intentionally, or with reckless disregard for the truth, included in the affidavit for the search warrant. *Franks*, 438 U.S. at 155–56.  In other words, a defendant must show the claimed inaccuracies or omissions were both (1) "designed to mislead" or "made in reckless disregard of whether [they] would mislead" and (2) materially false. *Rajaratnam*, 719 F.3d at 153–54 (citation omitted).

"An inaccuracy that is the result of negligence or innocent mistake is insufficient." *United States v. Perez*, 247 F. Supp. 2d 459, 472 (S.D.N.Y. 2003). In other words, the Court's "focus is not on whether a mistake was made, but rather on the intention behind the mistake." *United States v. Markey,* 131 F. Supp. 2d 316, 324 (D. Conn. 2001), *aff'd sub nom. United States v. Simpson*, 69 F. App'x 492 (2d Cir. 2003).

With respect to the second step of the Franks test, the Second Circuit has explained:

> To determine if the false information was necessary to the issuing judge's probable cause determination, i.e., material, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate. As with the inclusion of false information, "[o]missions from an affidavit that are claimed to be material are governed by the same rules." The ultimate inquiry is whether, after putting aside erroneous information and material omissions, "there remains a residue of independent and lawful information sufficient to support probable cause."

*Canfield*, 212 F.3d at 718 (alteration in original) (citations omitted) (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) and *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir. 1985)). In other words, even where a search warrant affidavit

contains false or misleading information, "a *Franks* hearing is required only if, 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.'" *United States v. Wapnick*, 60 F.3d 948, 956 (2d Cir. 1995) (footnote omitted) (quoting *Franks*, 438 U.S. at 156).

The *Franks* Court warned that a defendant's challenge of a warrant "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*. at 171. A defendant is required to make "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof" with the defendant's allegations "point[ing] out specifically the portion of the warrant affidavit that is claimed to be false" and "be[ing] accompanied by a statement of supporting reasons." *Id*.

### *"Around the time of [Mr. Wang's] travels to China, Wang accessed certain trade secret and export-controlled technical data"*

Contrary to Defendant's argument, it is apparent that each search warrant contained the date of the download of the 116 files folders and sub-folders–July 1, 2016—one to two paragraphs after the alleged vague statement that "[a]round the time of his travels to China, WANG accessed certain trade secrets and export-controlled technical data." (Zariczny Aff. ¶¶ 48–49, ECF No. 63-3; Zariczny Aff. ¶¶ 48–49, ECF No. 63-4; Zariczny Aff. ¶¶ 33 & 35, ECF No. 63-5; Valenzuela Aff. ¶¶ 33 & 35, ECF No. 63-6.)

Further, each search warrant affidavit includes a paragraph immediately preceding the one beginning "[a]round the time of his travels to China . . .," which lists the dates that Defendant traveled alone to China, including October 7, 2016.

(Zariczny Aff. ¶ 47, ECF No. 63-3; Zariczny Aff. ¶ 47, ECF No. 63-4; Zariczny Aff. ¶ 32, ECF No. 63-5; Valenzuela Aff. ¶ 32, ECF No. 63-6.) In other words, the search warrant affidavits first state when Defendant traveled to China and then included the date of the download a paragraph or two below so there is no doubt as to the timing of the download vis à vis the China trip. The undersigned therefore recommends that the District Judge deny this aspect of Defendant's motion.

> ***"[T]he files at issue show a last modification date that precedes the download date of July 1, 2016, but omit the fact that many of the files had last modification dates from the early 2000s."***

First, Defendant does not even superficially address whether this claimed omission was the result of the affiants' deliberate indifference or made with a reckless disregard for the truth. He simply adds one conclusory sentence that the "misrepresentations and omissions in the search warrant affidavits were made with reckless disregard to the truth, given the contrary evidence available to the government at the time the agents were swearing the affidavits." (Def.'s Mem. of Law at 6.) This statement does not suffice for purposes of suppression as Defendant fails to offer any proof in support of his conclusion.

Further, the undersigned does not believe omitting that the files had a last modification date in the early 2000's constitutes a material omission that would destroy probable cause for purposes of the issuance of the search warrants. Defendant has been charged, in part, with copying and possessing, or attempting to "steal,

appropriate and convey" a trade secret[1] knowingly and without authorization. (Indictment, ECF No. 1.) The modification date would not have any material relevance as to whether Defendant did, in fact, engage in the aforementioned conduct. For this reason, the undersigned recommends that the District Judge deny this portion of Defendant's motion.

> ***The search warrant affidavits assert that "on May 15, 2017 (two months before [Defendant's] scheduled trip to Beijing to attend a conference and see his ill father), Mr. Wang connected a USB thumb drive to his company-issued laptop and attempted to save (unspecified) files . . . They note that [ ] he was unsuccessful because Corning had changed company policy preventing access. But, they do not mention that Corning specifically approved an exception to their policy for Mr. Wang the same day."***

Neither party disputes that Corning granted Defendant an exception to its policy of blocking access to USB ports. Pursuant to the search warrant affidavits, Corning IT reactivated Defendant's port at his request on May 15, 2017. (Zariczny Aff. ¶ 55, ECF No. 63-3; Zariczny Aff. ¶ 55, ECF No. 63-4; Zariczny Aff. ¶ 42, ECF No. 63-5; Valenzuela Aff. ¶ 42, ECF No. 63-6.) Defendant alleges that the search warrant affidavits do not indicate that he saved any documents when he requested access to use his thumb drive in his work-issued laptop. (Def.'s Mem. of Law at 5.) Further, the search warrant affidavits indicate that "Corning's IT office . . . has not been able to determine" whether Defendant downloaded any files onto the thumb drive after they reactivated his port. (Zariczny Aff. ¶ 55, ECF No. 63-3; Zariczny Aff. ¶ 55, ECF No. 63-4; Zariczny Aff. ¶ 42, ECF No. 63-5; Valenzuela Aff. ¶ 42, ECF No. 63-6.)

---

[1] The trade secret that this the basis of these claims is the DARPA Laser Fiber Manufacturing Technology, which the government maintains was contained in the files accessed and downloaded by Defendant.

The undersigned finds that omitting that Defendant obtained approval for an exception to the policy was not a material fact necessary for the finding of probable cause. Indeed, the search warrant affidavits state that after Defendant requested access to the USB port "Corning's IT office [ ] reactivated the USB port," which implies that Corning's IT department approved an exception to its policy and allowed him to use a thumb drive on his laptop. (Zariczny Aff. ¶ 55, ECF No. 63-3; Zariczny Aff. ¶ 55, ECF No. 63-4; Zariczny Aff. ¶ 42, ECF No. 63-5; Valenzuela Aff. ¶ 42, ECF No. 63-6.) For this reason the undersigned recommends that the District Judge deny this aspect of Defendant's motion.

### *"[T]he government still does not allege that Mr. Wang downloaded any trade secrets on May 15, 2017 in advance of his July trip to China."*

First, the undersigned finds that Defendant has failed to demonstrate that the claimed omission that Defendant did not download any trade secrets on May 15, 2017, was the result of the affiants' deliberate falsehood or reckless disregard for the truth. Indeed, Defendant does not present any evidence to support this assertion other than his one conclusory sentence, as discussed above, that the "misrepresentations and omissions in the search warrant affidavits were made with reckless disregard to the truth, given the contrary evidence available to the government at the time the agents were swearing the affidavits." (Def.'s Mem. of Law at 6.)

Further, the undersigned acknowledges that there is no assertion in the search warrant affidavits that Defendant saved any files to the thumb drive when he obtained access to the computer's USB port. Therefore, even if the paragraph containing this information was removed from each search warrant affidavit it would

not affect the basis for probable cause to search the email addresses, the iPad, and/or the iPhone.

> **"[O]n July 14, 2017, Mr. Wang requested a larger hard drive for his company issued laptop, a request which was completed on August 14."**

Defendant has not made any allegation nor offered any proof that the affiants' purported omission constituted a deliberate falsehood or that the affiants acted with reckless disregard for the truth in any way. Again, Defendant's conclusory statement that the alleged "misrepresentations and omissions in the search warrant affidavits were made with reckless disregard to the truth, given the contrary evidence available to the government at the time the agents were swearing the affidavits," is not sufficient for suppression or for a *Franks* hearing.

But even if he had satisfied this burden, the undersigned finds that Defendant's assertion that he had been experiencing IT issues, "[t]he China project was already over, and [the request for a larger hard drive] was unrelated," are not material to a finding of probable cause. The undersigned determines that despite the alleged omission and the inferences drawn from the omission, by removing the alleged omission the search warrant affidavits still provide that: (1) Defendant was an employee of Corning, Inc. who had "worked exclusively in fiber optic research;" (2) there was a contract between Defendant, another individual and the Chinese to manufacture fiber optics in China; (3) Defendant "accessed certain trade secrets and export-controlled technical data" and downloaded 116 files and sub-file folders onto a USB thumb drive, some of which were designated by Corning as "Corning Restricted"—the second highest level of information security; (4) and that 440 of the

downloaded files related to the development of fiber lasers. (Zariczny Aff. ¶¶ 23, 43, 48, 49, ECF No. 63-3; Zariczny Aff. ¶¶ 23, 43, 48, 49, ECF No. 63-4; Zariczny Aff. ¶¶ 11 , 28, 33 , 35, ECF No. 63-5;  Valenzuela Aff. ¶¶ 11 , 28, 33 , 35, ECF No. 63-6.) Based upon the forgoing the undersigned finds it was reasonable to believe that a crime had been committed and that evidence of that crime would be found in the email addresses, the iPad, and/or the iPhone. For the above-stated reasons, the undersigned recommends that the District Judge deny Defendant's motion in this respect.

> **"[T]he affidavits omit the fact that Mr. Wang traveled to Beijing on July 15, 2017 and returned to the United States on August 4, 2017, and Corning IT forensics and an FBI affidavit confirm [sic] that Wang did not access the Corning network or even turn on his computer during his July/August 2017 trip to Beijing."**

The undersigned is perplexed by Defendant's assertion that the affidavits "omit the fact that Mr. Wang traveled to Beijing on July 15, 2017 and returned to the United States on August 4, 2017, and Corning IT forensics and an FBI affidavit confirm that Wang did not access the Corning network or even turn on his computer during his July/August 2017 trip to Beijing." (Def.'s Mem. of Law at 6.) A review of the search warrant affidavits reveals that they all indicate that Defendant (1) "did not access the Corning network," (2) "during this July trip," (3) "even though he brough is Corning issued laptop with him." (Zariczny Aff. ¶ 56, ECF No. 63-3; Zariczny Aff. ¶ 56, ECF No. 63-4; Zariczny Aff. ¶ 43, ECF No. 63-5; Valenzuela Aff. ¶ 43, ECF No. 63-6.) There does not appear to any omission as asserted by Defendant.

The only alleged omission the undersigned can glean from Defendant's papers is that the affiants misled the issuing magistrate judge by failing to specifically state

that Defendant "did not power on his laptop." (Def.'s Mem. of Law at 6.) If this is the argument it still fails because, once again, Defendant did not support this allegation with any proof that this omission constituted a deliberate falsehood or that the affiants acted with reckless disregard for the truth when omitting it other than including, as previously stated, the conclusory sentence, discussed above, that the "misrepresentations and omissions in the search warrant affidavits were made with reckless disregard to the truth, given the contrary evidence available to the government at the time the agents were swearing the affidavits." (Def.'s Mem. of Law at 6.) For these reasons the undersigned recommends that the District Judge deny this aspect of Defendant's motion.

**_Defendant is not entitled to a Franks Hearing_.**

Based upon the above discussion, the undersigned finds that Defendant has failed to make a substantial preliminary showing that the alleged misrepresentation and omissions were both (1) "designed to mislead" or "made in reckless disregard of whether [they] would mislead" and (2) materially false. *Rajaratnam*, 719 F.3d at 153–54 (citation omitted). Further, for reasons stated above, the undersigned finds that Defendant has failed to make a substantial preliminary showing that any of the claimed misrepresentations or omissions were material, such that their removal would affect a finding of probable cause. Accordingly, the undersigned recommends that the District Judge deny Defendant's motion for a *Franks* hearing.

***Findings of fact regarding Defendant's motion to suppress statements.***

Defendant seeks to suppress statements made to government agents on November 6, 2018, on the basis that he made them involuntarily during a custodial interrogation without being "properly" informed of his *Miranda* rights. (Def.'s Mem. of Law at 7, 8.) In the alternative, Defendant seeks a hearing "to determine whether Mr. Wang's rights were denied by the agents' actions and whether any statements alleged to have been made were voluntary and made after an appropriate, informed and voluntary waiver of the right to counsel." (*Id*. at 10.)

Defendant was employed at Corning in 2018 working as the lead scientist on a fiber laser research and development project initiated by DARPA. (Def.'s Decl. ¶ 3, ECF No. 63-10.) Defendant contends that on November 6, 2018, "he was working at Corning and preparing for lab experiments on a critical top company project" when two members of Corning Security "escorted [him] to a conference room for an interview with FBI agents." (*Id*. ¶ 5.) He contends that prior to entering the conference room he was "told to give [his] Corning-issued cell phone to Corning security" and he complied. (*Id*. ¶ 7.)

Defendant asserts that the room was windowless and that the window on the door had been covered with paper and tape. (*Id*. ¶ 6.) Defendant further asserts that there "were five or six agents sitting at a round table in the conference room. Some of the agents clearly appeared armed. Corning security personnel also stayed in the room, standing by the door." (*Id*. ¶ 8.) Defendant sat "at the center of the round table, with a couple agents on either side of [him]." (*Id*. ¶ 9.)  In addition, "there was a

22

monitoring camera facing [him]." (*Id.*) Defendant contends that "English is not [his] native language" and that his "knowledge of English vocabulary relating to legal matters is lacking." (*Id.* ¶ 10.) He asserts that the agents "did not offer [him] an interpreter during their questioning," nor did they "inform [him] of any constitutional rights, [his] right to remain silent, to have an attorney present, or any other rights before they started interviewing [him]." (*Id.* ¶¶ 10 & 11.)

Defendant contends that "[t]he interview lasted more than six hours and that "[d]uring the interview, [he] was in total mental shock and felt extremely threatened. [He] did not feel free to leave. [He] complied with all of the government's requests, including participating in a lie detector test." (*Id.* ¶ 12.) Finally, Defendant asserts that "[a]fter [he] had already responded to the government's questions, an agent advised [him] of the *Miranda* rights and gave [him] two forms to sign before taking a lie detector test. The government then re-interviewed him." (*Id.* ¶ 13.)

The government asserts that Defendant was not "in custody" such that the agents should have provided him with *Miranda* warnings because he: (1) was interviewed at a place where he had worked for over twenty years; (2) he was told the interview was voluntary and that he was free to leave at any time[2]; (3) the agents did not display or brandish any weapons or handcuffs; and (4) Defendant "did not ask for

---

[2] While Defendant does not include in his declaration that the agents told him the interview was voluntary and that he was free to leave at any time, he refers to these statements in his memorandum of law and does not dispute their veracity. (*see* Def.'s Mem. of Law at 9.) Indeed, with its opposition the government attached an FBI interview memorandum from Defendant's November 6, 2018 interview, labeled as an "official record," which provides on the first page "WANG was advised by the interviewing Agents the interview was voluntary and WANG could leave at anytime." (Gov't Mem. of Law, Ex. A, ECF No. 68-1.)

an interpreter and discussed subjects that were familiar to him in English: his family, his work, his travels, and his future business plans." (Gov't's Mem. of Law at 18.)

### Legal Conclusions Regarding Defendant's Motion to Suppress Statements.

"*Miranda*'s warning requirements apply only to 'custodial interrogation.'" *United States v. Newton*, 369 F.3d 659, 669 (2d Cir. 2004) (quoting *Miranda v. Arizona*, 384 U.S. 436 (1966). The Supreme Court has explained:

> Two discrete inquiries are essential to the [custody] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

*J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "[T]he overarching custody question is whether a reasonable [person] in the suspect's position would have understood [himself] to be subjected to restraints comparable to those associated with a formal arrest." *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011) (internal quotations and citations omitted). The Second Circuit has described the test for determining custody status as asking "(1) whether a reasonable person would have thought he was free to leave the police encounter at issue, and (2) whether a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016) (internal quotations and citation omitted). While both parts of the test must be satisfied to conclude that an individual is in custody, the second question is the "ultimate inquiry" because the first

question only reveals whether the individual was seized and "[n]ot all seizures amount to 'custody'; a seizure is a necessary, but not sufficient, condition." *Id*. (quoting *Newton*, 369 F.3d at 672.

"[T]he subjective views harbored by either the interrogating officers or the person being questioned are irrelevant." *J.D.B.*, 564 U.S. at 271 (internal quotations and citation omitted). "The test, in other words, involves no consideration of the 'actual mindset' of the particular suspect subjected to police questioning." *Id*. (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 667 (2004); *see also California v. Beheler*, 463 U.S. 1121, 1125, n.3 (1983) (*per curiam*).

Among the relevant factors to consider in making the custody determination are "the interrogation's duration; its location (e.g., at the suspect's home, in public, in a police station, or at the border); whether the suspect volunteered for the interview; whether the officers used restraints; whether weapons were present and especially whether they were drawn; whether officers told the suspect [s]he was free to leave or under suspicion . . . ." *Faux*, 828 F.3d at 135 (quotations, citation, and numbering omitted).

Defendant does not dispute that he was told that the interview was voluntary and that he was free to leave at any time. He does not indicate that he was restrained, by handcuffs or otherwise. While he indicates that Corning security stayed in the room, he does not say that they were blocking the door or prevented him from leaving. There is no allegation that the door was locked. Further, while Defendant indicates

that "[s]ome of the agents clearly appeared armed," he has not asserted that those agents ever displayed or drew any weapons during the questioning.[3]

The parties dispute whether being at his place of work during the interview weighs in favor or against being in custody for the purposes of *Miranda*. Defendant cites to *United States v. Romaszko*, 253 F.3d 757 (2d Cir. 2001) for the proposition that a reasonable person being questioned at his workplace and who was ordered to the interview room by a colleague "would not have felt at liberty to terminate the interrogation and leave without suffering the economic sanction of losing their job." (Def.'s Mem. of Law at 9.) But as the government aptly points out, there were other circumstances present in that case that are not present here. For example, when two Postal Inspectors confronted  Romaszko at work she was "immediately accused [ ] of stealing money; she was never told she was free to leave the meeting; she either asked or attempted to leave at least five times and was told she could not; and the lead investigator told her during the meeting "No, you're not going anywhere." *Id.* at 759.

In contrast, in a more recent Second Circuit case cited by the government, *United States v. Schaffer*, 851 F.3d 166 (2d Cir. 2017), *cert. denied*, 583 U.S. 999 (Nov.

---

[3] Defendant's assertions that the agents did not offer to provide him with an interpreter, that English is not his native language, and that the "language barrier [ ] undermine[d] [Defendant's] ability to appropriately waive his rights under *Miranda*" (Def.'s Decl. ¶ 10; Def.'s Mem. of Law at 10) are moot because, as discussed below, the undersigned finds that Defendant was not in custody for purposes of *Miranda* and was, therefore, never in a position to waive his rights. However, even if Defendant had been in custody such that the agents should have *Mirandized* him, the undersigned finds that to become a nationalized United States citizen Defendant was required to have a proficient understanding of English. In addition, he was required to understand some constitutional law. According to the FBI's memorandum of Defendant's interview, Defendant attended the University in England and lived in England for ten years. (Gov't Mem. of Law, Ex. A, ECF No. 68-1.) In other words, the undersigned finds Defendant is sufficiently familiar with the English language to undermine his claim otherwise.

27, 2017), the Second Circuit affirmed the district court's finding providing, in part, that because "the agents interviewed [the defendant] in the familiar surroundings of his office . . ." this weighed against the defendant's claim that he was in "custody" during his interview. *Id.* at 174. The undersigned thus finds that Defendant's presence in the familiar setting at work during the interview cuts against a finding that Defendant was in custody during his interview.

There are facts that militate in favor of finding Defendant's interrogation to be "custodial:" (1) Corning security took Defendant's phone prior to the interview and (2) the interview lasted approximately six hours. However, Defendant was told that the interview was voluntary and that he was free to leave at any time. The interview took place in the familiar setting of his workplace. He was not restrained in any way. Therefore, the undersigned finds that a reasonable person in Defendant's position would have felt "free to leave."

Moreover, given that Defendant was not under arrest, was not handcuffed, no handcuffs were displayed, no firearms were displayed, and he was told he could leave and that the interview was voluntary, the undersigned finds that a reasonable person in Defendant's position would not have understood himself to be subjected to restraints comparable to those associated with a formal arrest. Based on the totality of the circumstances the undersigned finds that Defendant was not in custody such that the agents were required to provide him with *Miranda* warnings. For these same reasons, the Court does not believe that Defendant has raised any disputed fact necessitating an evidentiary hearing. Based upon the forgoing, the undersigned

recommends that the District Judge deny Defendant's motion to suppress statements and for a hearing related to same.

***Findings of fact regarding Defendant's motion to dismiss Counts One, Two, Five, Six, and Seven of the Indictment.***

Defendant seeks dismissal of Counts One, Two, Five, Six, and Seven of the Indictment on the grounds that these Counts fail to allege that Defendant "knew that the files he downloaded were proprietary," which Defendant asserts is an essential element of the offenses charged in those Counts. (Def.'s Mem. of Law at 10.) Defendant contends that because of this the Indictment violates the "Indictment Clause of the Fifth Amendment and the Notice Clause of the Sixth Amendment." (*Id.*) Counts One and Five charge violations of the Economic Espionage Act, 18 U.S.C. § 1831(a), and Counts Two, Six, and Seven charge Defendant with theft of trade secrets in violation of 18 U.S.C. § 1832(a), which is also a provision under the Economic Espionage Act. (Indictment, ECF No. 63-1.)

The government asserts that the Court has not ruled on jury instructions with respect to the Economic Espionage charges and contends that there is no consensus that such charges include that Defendant "must know that the files he copied and attempted to convey were proprietary." (Gov't Mem. of Law at 26.) However, for purposes of this motion, the government assumes that knowledge that the files Defendant downloaded are proprietary is an element of the offenses and contends that the "Indictment sufficiently alleges that Wang knew that the files he downloaded were proprietary." (*Id.*) First, the government argues that all five counts in question put Defendant on notice that the files he allegedly copied and attempted to convey

28

were not his and "were instead the property of (proprietary to) someone else–in this case, Corning." (*Id*. at 32.) The government states that the following language contained in each of the Counts at issue in the Indictment put Defendant on notice that the files he allegedly copied and attempted to convey were proprietary:

> [Defendant] "knowingly and without authorization" copied "the DARPA Laser Fiber Manufacturing Technology Files, which contained a trade secret, that is, DARPA Laser Fiber Manufacturing Technology." Indictment ¶ 29 (Count 1), ¶ 31 (Count 2); *see id*. ¶ 37 (Count 5) ("attempting knowingly and without authorization to . . . convey, a trade secret, namely, DARPA Laser Fiber Manufacturing Technology"), ¶ 39 (Count 6) (same), and ¶ 41 (Count 7) (same).

(Gov't Mem. of Law at 31–32.)

The government further asserts that the Indictment defines the term "DARPA Laser Fiber Manufacturing Technology," that the technology is "proprietary and owned by Corning" and that the defined term is used in each Count. (Gov't Mem. of Law at 32, citing to Indictment, ¶¶ 7–8, ¶ 29 (Count 1), ¶ 31 (Count 2), ¶ 37 (Count 5), ¶ 39 (Count 6), and ¶ 41 (Count 7).) The government also contends that the section of the Indictment titled "Introductory Allegations" includes allegations that Defendant knew he downloaded proprietary information and that those allegations are thereafter incorporated by reference into each of the five counts at issue. (Gov't Mem. of Law at 32.) The allegations include that: (1) "[t]he DARPA Laser Fiber Manufacturing Technology was proprietary to and owned by Corning" and (2) "[a]ll research and development work on the DARPA project was confidential and proprietary" (Indictment ¶ 9, ¶ 11, ¶ 28 (Count 1), ¶ 30 (Count 2), ¶ 36 (Count 5), ¶ 38 (Count 6), ¶ 40 (Count 7).)

Further, during oral argument the government contended that the allegations contained paragraphs 10(b) and (c) of the Indictment, which were incorporated by reference into each count at issue, demonstrate that Defendant was put on notice that the DARPA Laser Fiber Manufacturing Technology files were proprietary. These paragraphs provide as follows:

> 10. Corning took reasonable measures to protect its intellectual property, including the DARPA Laser Fiber Manufacturing Technology, from unauthorized disclosure and use through various measures and techniques. Those measures and techniques included, among others:
> . . .
> b. Requiring employees, including WANG, to execute agreements prohibiting the disclosure and use of proprietary information, except in the course of their official work duties;
> c. Training employees, including WANG, on the protection and confidentiality of sensitive/proprietary/trade secret information, as well as export-controlled technology.

(Indictment ¶ 10, ECF No. 1.)

Finally, the government highlights that Defendant does not challenge the possession counts (Counts 2 and 3) because they allege that Defendant "did knowingly possess a trade secret . . . knowing the same to have been . . . converted without authorization." (Def.'s Mem. of Law at 33; Indictment ¶ 33 (Count 3), ¶ 35 (Count 4.)

### *Legal conclusions regarding Defendant's motion to dismiss Counts One, Two, Five, Six, and Seven of the Indictment.*

Federal Rule of Criminal Procedure 7(c) requires that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the

charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."). The indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Alfonso*, 143 F.3d at 776 (quoting *Stavroulakis*, 952 F.2d at 776).

Here, the undersigned finds that the Indictment sufficiently alleges that Defendant knew the files he downloaded were proprietary. An indictment must be read as a whole. *United States v. Agrawal*, 726 F.3d 235, 261 (2d Cir. 2013), *cert. denied*, 572 U.S. 1007 (Mar. 10, 2014) (reading an indictment "as a whole"); *United States v. Strewl*, 99 F.2d 474, 477 (2d Cir. 1938) ("the indictment may be read as a whole."). If the indictment, taken as a whole, defines the allegations with enough precision to enable the defendant to prepare a defense, it is legally sufficient. Therefore, while the elements of an alleged offense can be clarified through recapitulation in a separate section, they are not legally required to be listed in this way. *See United States v. Klein*, 216 F. App'x. 84, 88 (2d Cir. 2007) (holding that an indictment properly stated an offense, even though one of the elements of the offense was satisfied by incorporating by reference allegations of another paragraph

contained in the indictment.); *United States v. Adelglass*, No. 20-CR-605 (JSR), 2022 WL 6763791, at *2 (S.D.N.Y. Oct. 11, 2022) (holding that indictment sufficiently alleged the *mens rea* of an offense where it was included in the indictment's "Introduction" as opposed to under the section titled "Statutory Allegations" where the defendant argued that all legally required elements must be alleged).

Defendant is incorrect with respect to Counts Five, Six, and Seven as the Indictment does allege that Defendant "knowingly and without authorization" attempted "to steal, appropriate and convey, [sic] a trade secret, namely DARPA Laser Fiber Manufacturing Technology." In other words, those Counts do allege the *mens rea* element, assuming that there is such an element, and specifically name the alleged trade secret he knowingly attempted to steal, appropriate and/or convey.

Even if Counts Five, Six, and Seven had not specifically included the *mens rea*, the Indictment sufficiently puts Defendant on notice that he knew the files he downloaded were proprietary. Paragraph 7 of the Indictment defines the DARPA Laser Fiber Manufacturing Technology and paragraph 8 explicitly indicates that the technology is proprietary. Further, paragraph 10(b) indicates that Defendant signed agreements prohibiting him from disclosing or using proprietary information and that the DARPA Laser Fiber Manufacturing Technology was included within this prohibition. (Indictment ¶ 10 & 10(b).) It further alleges that Defendant received training regarding the protection of certain information, including but not limited to proprietary and trade secret information. (*Id.* ¶ 10(c).) Finally, Counts 3 and 4 put Defendant on notice that he "did knowingly possess a trade secret, that is DARPA

Laser Fiber Manufacturing Technology, including the DARPA Laser Fiber Manufacturing Technology files." (Indictment ¶ 33 (Count 3); ¶ 35 (Count 4.) So even if the five challenged Counts cannot be read to include the *mens rea* as Defendant alleges, it can be gleaned from reading the Indictment as a whole that Defendant knew the DARPA Laser Fiber Manufacturing Technology files were proprietary. For this reason the undersigned recommends that the District Judge deny Defendant's motion challenging the sufficiency of Counts One, Two, Five, Six, and Seven.

## CONCLUSION

Based on the forgoing, the undersigned recommends that the District Court

(1) Deny that aspect of Defendant's motion seeking to suppress the search warrants and for a *Franks* hearing;

(2) Deny that aspect of Defendant's motion seeking to suppress statements and for a hearing related to same; and

(3) Deny that aspect of Defendant's motion seeking to dismiss Counts One, Two, Five, Six, and Seven of the Indictment for insufficiency.

Pursuant to 28 U.S.C. § 636(b)(1), the undersigned hereby

**ORDERS**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:   March 8, 2024
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge

34