UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                                              Case No. 21-CR-06108-FPG

                                                                                                  DECISION AND ORDER

JI WANG,

                              Defendant.
_____

## INTRODUCTION

On June 24, 2021, Defendant Ji Wang ("Defendant" or "Wang") was charged in a ten-count indictment (the "Indictment") with: (1) Economic Espionage–Copying–18 U.S.C. § 1831(a)(2); (2) Theft of Trade Secrets–Copying–18 U.S.C. § 1832(a)(2); (3) Economic Espionage–Possessing–18 U.S.C. § 183l(a)(3); (4) Theft of Trade Secrets–Possessing–18 U.S.C. § 1832(a)(3); (5) Economic Espionage–Attempt–18 U.S.C. § 1831(a)(4); (6) Theft of Trade Secrets–China Attempt–18 U.S.C. § 1832(a)(4); (7) Theft of Trade Secrets–Venture Capital Attempt–18 U.S.C. § 1832(a)(4); (8) International Emergency Economic Powers Act (July 2017 to August 2017); (9) International Emergency Economic Powers Act (October 2017 to November 2017); and (10) International Emergency Economic Powers Act–Attempt. ECF No. 1. On July 7, 2021, this case was referred to United States Magistrate Judge Mark W. Pedersen for all pretrial matters pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (b)(1)(B). ECF No. 4.

Defendant, formerly a scientist with Corning Incorporated ("Corning"), allegedly copied and stole trade secrets and propriety information associated with an optical fiber research project funded by the Defense Advanced Research Projects Agency ("DARPA"), the purpose of which was to support innovative technologies for national security. ECF No. 1-4. Specifically, the DARPA project supported the development and production of high-powered optical laser fibers

1

that could be weaponized and used to combat drones. *Id*. at 2. Defendant was a lead scientist on the project, and is alleged to have attempted to establish a laser fiber business in China, called QuantumWave, and then the United States, improperly using information he obtained from the project. *Id*. at 5-6.

On November 20, 2023, Defendant filed an omnibus motion seeking, *inter alia*, suppression of tangible evidence and statements, a *Franks* hearing, and dismissal of Counts One, Two, Five, Six, and Seven of the Indictment. ECF No. 63. On January 22, 2024, the Government filed its opposition to Defendant's motion. ECF No. 68.

On March 8, 2024, Magistrate Judge Mark W. Pedersen issued a Report and Recommendation (the "R&R"), recommending that the District Court deny Defendant's motion to suppress tangible evidence and his request for a *Franks* hearing, his motion to suppress statements, and his motion seeking dismissal of Counts One, Two, Five, Six, and Seven of the Indictment. ECF No. 72. On May 8, 2024, Defendant objected to the R&R, arguing that (i) the evidence obtained pursuant to four relevant search warrants should be suppressed, and that he is entitled to a *Franks* hearing; (ii) statements obtained from Defendant should be suppressed; and (iii) Counts One, Two, Five, Six, and Seven of the Indictment should be dismissed. ECF No. 82. On May 14, 2024, the Government responded to Defendant's objections. ECF No. 83. For the reasons set forth below, Defendant's motion is DENIED and the R&R is ADOPTED.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). In addition, "[t]he Second Circuit has instructed that where a Magistrate Judge conducts an evidentiary hearing and makes credibility findings on disputed issues of fact, the district court will ordinarily accept those credibility findings." *United States v. Lawson*, 961 F. Supp. 2d 496, 499 (W.D.N.Y. 2013); *see Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008).

## DISCUSSION

**I.     Motion to Suppress Tangible Evidence and for a *Franks* Hearing**

Defendant argues that the R&R failed to analyze six asserted bases for the search warrants' purported invalidity in a collective fashion, and instead analyzed each asserted basis for the warrants' invalidity individually. *See* ECF No. 82 at 3; *see also* ECF No. 72 at 6-21. Specifically, Defendant argues that "2 or more bas[es] considered together should also be analyzed together to determine if the combined instances eliminate probable cause." *Id*. Defendant does not challenge any individual rejection of each of his six asserted bases for finding the search warrants invalid, instead suggesting in conclusory fashion that combining them would render the warrants invalid. Despite Defendant's argument, the Court's consideration of each basis together, as Defendant requests, would not destroy probable cause. *Id*.

Where a party does not specifically object to a portion of a Magistrate Judge's R&R, the Court reviews those portions only for "clear error." *United States v. Berry*, No. 15CR00098FPGHKS7, 2017 WL 5624242, at *2 (W.D.N.Y. Nov. 22, 2017) (internal citations omitted). The Court is permitted "to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous." *Batista v. Walker*, No. 94 CIV. 2826 (SS), 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995). After a

thorough review of Magistrate Judge Pedersen's conclusions with respect to each of the six asserted bases for finding the search warrants invalid, *see* ECF No. 72 at 13-21 (discussing, at length, alleged misrepresentations and omissions in search warrant affidavits), the Court is satisfied that these portions of the R&R are free of "clear error." *Preston*, 635 F. Supp. 2d at 269. Because each asserted basis is without merit, as Magistrate Judge Pedersen correctly concluded, it is rudimentary that consideration of the "combined instances" together would not materially affect the outcome of Defendant's motion to suppress. *Id*. Zero plus zero equals zero. Defendant's conclusory assertion that each basis must be analyzed "collectively" does not entitle him to *de novo* review of these portions of the R&R, nor will the Court "retrace every step previously taken" by Magistrate Judge Pedersen's R&R. *See United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); *Dennard v. Kelly*, No. 90–CV–0203E, 1997 WL 9785, *1 (W.D.N.Y. Jan. 2, 1997). Defendant's motion to suppress tangible evidence is denied in this regard.[1]

In addition, Defendant argues that he is entitled to a *Franks* hearing. ECF No. 82 at 4. Defendant asserts, without elaboration, that he has made a "substantial preliminary showing in his moving papers [that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit[s]] […]," which demonstrates his entitlement to such a hearing. *Id*. As stated, where a party makes only "conclusory or general objections, or simply reiterates his original arguments," clear error review applies. *Barratt v. Joie*, No. 96–CV–324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002). Defendant's objection is

---

[1] In addition, the Court notes that Defendant did not argue that each purported basis for invalidity should be analyzed collectively in his omnibus motion. ECF No. 63-1 at 3-7. Defendant's failure to raise this argument before Magistrate Judge Pedersen provides an alternative basis for its rejection. *See Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co*., 840 F.2d 985, 990 (1st Cir. 1988) (party not entitled to *de novo* review by district judge of an argument not raised before the magistrate judge); *see also Walker v. Stinson*, 205 F.3d 1327 (2d Cir. 2000) (district court did not abuse discretion in declining to consider argument raised before district judge which was not raised before magistrate judge); *Bonano v. Tillinghast*, No. 18-CV-6405EAW, 2024 WL 2000518, at *3 (W.D.N.Y. Apr. 16, 2024).

4

"conclusory" and "general," and offers no substantive challenge to Magistrate Judge Pedersen's rejection of his motion for a *Franks* hearing.

Such "general objections" are insufficient to warrant *de novo* review of the R&R, and are contrary to the purpose of the Federal Magistrate's Act, which is to "relieve courts of unnecessary work and to increase the overall efficiency of the federal judiciary." *Pattee*, 2013 WL 6579066, at *2 (internal citations omitted). Because a "proceeding before the Magistrate Judge is not a meaningless dress rehearsal[,]" clear error review applies. *Dennard*, 1997 WL 9785, at *1.

Accordingly, the relevant portion of the R&R is reviewed for clear error. Here, Magistrate Judge Pedersen properly concluded in his R&R that Defendant "failed to make a substantial preliminary showing that the alleged misrepresentation and omissions were both (1) 'designed to mislead' or 'made in reckless disregard of whether [they] would mislead' and (2) materially false[,]" and that Defendant "failed to make a substantial preliminary showing that any of the claimed misrepresentations or omissions were material, such that their removal would affect a finding of probable cause." ECF No. 72 at 21 (internal citations omitted). Defendant's assertion to the contrary is not persuasive. Accordingly, Defendant's motion for a Franks hearing is denied.

In addition, Defendant's "blanket objection" to Magistrate Judge Pedersen's findings, referencing his "moving papers" does not comply with Local Rule of Civil Procedure 72(b), which requires a Defendant to "flesh out the basis and legal authority for his objections." *United States v. Pattee*, No. 12-CR-6183-PFG, 2013 WL 6579066, at *1 (W.D.N.Y. Dec. 13, 2013); *see* ECF No. 72 at 34 (advising Defendant that failure to comply with Rule 72(b) may result in district court's refusal to consider objection).

5

## II. Motion to Suppress Statements

Next, Defendant argues that statements he made to law enforcement should be suppressed because he was "in custody" when he was interviewed by FBI agents at his workplace, and not provided *Miranda* warnings before the interview. ECF No. 82 at 4-6. For the reasons set forth below, the Court disagrees.

Defendant worked as a scientist at Corning from 1998 until 2019. ECF No. 1-4. As discussed in the R&R, on November 6, 2018, Defendant was at work when two members of Corning security escorted him to a conference room for an interview with the FBI. ECF No. 72 at 22 (citing ECF No. 63-10 (Defendant's Declaration)). Defendant was told to provide his Corning-issued cell phone to security before entering the conference room, and he complied. *Id*.

The conference room was windowless, except for a window on the door, which was covered with paper and tape. *Id*. "Five or six" FBI agents sat at a round table in the room, and some appeared to be armed. *Id*. Members of Corning security remained in the room, standing near the door, but not blocking it. *Id*. Defendant sat at the center of the table, with agents on either side of him, and a monitoring camera facing him. ECF No. 72 at 22-23. Defendant was advised by the interviewing FBI agents that the interview was voluntary, and that he was free to leave at any time. *Id*. at 23. Though English is not Defendant's native language, he participated in the interview in English. *Id*. Defendant was not provided an interpreter, nor did he request one. *Id*. Defendant was not given *Miranda* warnings before the interview.

The interview lasted approximately six hours. *Id*. During the interview, the FBI agents did not display or brandish any weapons or handcuffs. *Id*. Defendant discussed subjects in English, such as his family, work, travels, and future business plans. ECF No. 72 at 22-23. At some point after Defendant had responded to some of the FBI agents' questions, an agent advised

him of his *Miranda* rights, administered a lie detector test, and the agents then re-interviewed him. *Id*. at 23. Defendant stated that he felt "threatened" and that he "did not feel free to leave" during the interview. *Id*.

It is well-settled that *Miranda* warnings must be given to a suspect who is subjected to a "custodial interrogation." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). An individual is in "custody" if two conditions are met: (1) "a reasonable person [in the suspect's situation] would have thought he was [not] free to leave the police encounter at issue" and (2) "a reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016) (quotations omitted).

To determine whether a suspect's freedom of movement was "curtailed to a degree associated with formal arrest," courts are required to conduct an objective examination of "all the surrounding circumstances." *Id*. at 135. Because an objective inquiry is required, "[a]n individual's subjective belief about his or her status generally does not bear on the custody analysis." *Id*. Rather, courts should consider several factors, which include:

> (1) the interrogation's duration; (2) its location (e.g., at the suspect's home, in public, in a police station, or at the border); (3) whether the suspect volunteered for the interview; (4) whether the officers used restraints; (5) whether weapons were present and especially whether they were drawn; and (6) whether officers told the suspect he was free to leave or under suspicion.

*Id*.

Defendant argues that "there should have been more inquiry [in the R&R] into whether [Defendant] actually understood what he was told" when the interviewing FBI agents stated that the interview was voluntary and that he was free to leave. ECF No. 82 at 4-6. Defendant claims that his English skills are limited because English is not his native language. *Id*.; *see* ECF No. 63-10. In addition, Defendant argues that the R&R should not have found that the location of the interview—Defendant's workplace—weighed against a finding that Defendant was not in custody

7

because the "context and circumstances of the [interview] all pointed toward custody." *Id*. at 5-6. The Court addresses each argument in turn before concluding that Defendant was not in custody during the interview at his workplace on November 6, 2018.

Defendant does not dispute that the FBI agents told him that the interview was voluntary and that he was "free to leave," but appears to argue that he did not understand what those terms meant or that the interview was voluntary. ECF No. 82 at 5-6. Defendant seems to contend that he cannot be said to have "volunteered for the interview," and that the agents' statement that he was free to leave should not be given weight in the custody determination. *Faux*, 828 F.3d at 135. Based on the totality of the circumstances surrounding the interview, the Court is not persuaded by Defendant's claim that he did not understand the import of the FBI agents' statements.[2]

At the time of the interview, Defendant had worked at Corning as a scientist for approximately twenty years. ECF No. 1-4. Defendant participated in the interview, which lasted for approximately six hours, in English, and he did not request an interpreter. ECF No. 72 at 23. Defendant did not indicate that he did not understand the FBI agents' statements that the interview was voluntary, or that he was free to leave. It is undisputed that Defendant discussed several subjects in English throughout the interview, such as his family, work, travels, and future business plans. *Id*. at 22-23. In addition, though this is not necessarily dispositive, the record reflects that

---

[2] The Court need not address whether the statements sought to be suppressed were themselves "involuntary" because Defendant contends only that the interview was "custodial," not that he made "involuntary non-custodial statements." *United States v. Haak*, 884 F.3d 400, 409 (2d Cir. 2018); ECF No. 82 at 4-5. Though a "voluntariness" challenge and a "custody" challenge are similar, insofar as each require examination of the totality of the surrounding circumstances—which include, the conditions of a police interview and the characteristics of the defendant—they are distinct inquiries. *See United States v. Xiaojie Shun*, No. 116CR00075RJAMJR, 2019 WL 4396237, at *5 (W.D.N.Y. Apr. 10, 2019).

And, even if Defendant raised a "voluntariness" challenge, the Court is not convinced that "[D]efendant's will was overborne" by the agents conduct in the interview, as it must be, to conclude that the statements were involuntary. *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). In any event, it is not enough "mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)

Defendant obtained a PhD in fiber optics at the University of Southampton, which is in the United Kingdom, where he lived for ten years. ECF No. 68-1 at 2. Defendant has stated that he has published more than one-hundred publications in American and European journals on the topics of optical fiber and fiber fabrication technology. ECF No. 63-1 at 7. While English may not be Defendant's native language, and his knowledge of "English vocabulary relating to legal matters" may be lacking, as he contended in his omnibus motion, the Court is not persuaded that Defendant has meaningfully disputed whether he understood what the FBI agents said when they told him the interview was "voluntary" and that he was "free to leave." ECF No. 63-10. The concepts of volition and freedom of movement have legal significance, but they are not complex "legal matters" which require one to be familiar with constitutional law, as Defendant contends. *Id.*

Accordingly, Defendant's participation in the interview, and the FBI agents' statements to Defendant that his participation was voluntary, weigh in favor a determination that Defendant was not in custody. *See United States v. Xiaojie Shun*, No. 116-CR-00075-RJA-MJR, 2019 WL 4396237, at *5 (W.D.N.Y. Apr. 10, 2019), *report and recommendation adopted*, No. 16-CR-75-A, 2019 WL 4394242 (W.D.N.Y. Sept. 13, 2019) (denying motion to suppress statements of non-native speaker of English where defendant had "some command of English," defendant "did not ask for an interpreter at any time before or during the interview, and defendant participated in "six-hour interview," providing "appropriate and detailed responses to the questions asked"); *see also United States v. Jabu*, No. 12-CR-454, 2012 U.S. Dist. LEXIS 158600 (E.D.N.Y. Nov. 5, 2012) (rejecting defendant's argument that his limited command of English prevented him from knowingly and voluntarily waiving his *Miranda* rights because an officer credibly testified that the defendant actively participated in a twenty-minute interview where he did not ask for a translator, appeared to understand the questions asked, never indicated that he did not understand,

9

and gave relevant and responsive answers to the officer's questions that went beyond a simple "yes" or "no"); *United States v. Richardson*, No. 09-CR-874, 2010 U.S. Dist. LEXIS 136004 (E.D.N.Y. Dec. 23, 2010) (finding that defendant's English skills were sufficient where defendant participated in a forty-minute English interview where he gave relevant and detailed responses, defendant never indicated that he did not understand the warnings and defendant followed officers' instructions and appeared to understand their conversations).

In addition, Defendant argues that the location of the interview—Defendant's workplace—should not weigh in favor of finding that Defendant was not in custody because the "context and circumstances of the [interview] all pointed toward custody." ECF No. 82 at 5-6. While the interview in this case included characteristics that are often present in a custodial interrogation, the Court maintains that Defendant's interview at Corning on November 6, 2018 was not custodial. For the reasons below, the Court concludes that a reasonable person in Defendant's position would not have "understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Faux*, 828 F.3d at 135.

As discussed, Defendant was at work on the date of the interview, and he was escorted to a conference room by Corning security. While Defendant's cell phone was taken before the interview, and the length of the interview was significant, Defendant was not restrained during the interview, by handcuffs or otherwise, nor was he prevented from leaving the conference room. Defendant was told that the interview was voluntary and that he was free to leave at any time. Though some FBI agents appeared to be armed, as on-duty agents often are, no firearms were displayed or brandished during the interview. Defendant participated in the entire interview, and was not arrested at its conclusion.

As stated, Defendant's primary objection to the R&R is that the location of the interview should not weigh in favor of finding the interview non-custodial. ECF No. 82 at 5-6. Specifically, Defendant argues that *United States v. Schaffer*, which was relied upon by the R&R, should be distinguished from this case because, in that case, a non-custodial police interview took place within the confines of an individual office, not a conference room "filled with law enforcement" and "armed interrogators." ECF No. 82 at 5-6; 851 F. 3d 166 (2d Cir. 2017). This case, according to Defendant, is more like *United States v. Romaszko*, where a suspect interviewed at her workplace was found to be in custody. 253 F.3d 757 (2d Cir. 2001). Because there are important differences between those cases, and this case more closely resembles *Schaffer*, the Court is not persuaded by Defendant's argument.

In *United States v. Romaszko*, a window clerk at the Niagara Square Post Office was interviewed by Postal Inspectors in the office of the station manager. 253 F.3d at 759. Before the interview, the suspect was directed by her boss to attend the interview, confronted by the Postal Inspectors with badges, handcuffs, and weapons, and immediately accused of stealing money from the Office by the Inspectors. *Id*. The suspect was "never told that she was free to leave" the interview. *Id*. On at least five occasions, the suspect asked to leave the interview or attempted to stand up, only to be told that she could not. *Id*. Indeed, at one point during the interview, an investigator told the suspect, "No, you're not going anywhere," when the suspect attempted to leave. *Id*. Based on these factual findings of the district court, the Second Circuit affirmed the district court's conclusion that the interview was "custodial from its inception." *Id*. at 761. The suspect was "ordered into a room and told on at least five occasions she could not leave." *Id*.

By contrast, in *United States v. Schaffer*, the owner of a retail store in Jersey City was interviewed by two Homeland Security Investigations ("HSI") agents at his office building while

11

seven other agents conducted a warrant-authorized search of the premises. 851 F.3d at 166. The suspect agreed to speak with the two agents in an area of the building near his office and, at the beginning of the interview, was advised by the agents that he was "not under arrest." *Id*. at 170. In total, "nine agents [were] in the office during the interview[,]" which lasted approximately an hour. *Id*. at 175. The suspect was not handcuffed or otherwise restrained during the interview, nor were any weapons drawn. *Id.* During the interview, however, the suspect asked twice if he could leave "to collect money from an attorney located down the street[,]" but the agents denied both of his requests on the grounds that it would create a "security issue" that may threaten the integrity of the ongoing search.[3] *Id*. The suspect's argument that he was "in custody" because the agents denied both of those requests was rejected by the district court. *Id*. at 174. The district court concluded, and the Second Circuit affirmed, that the suspect's freedom of movement was not "curtailed to a degree associated with formal arrest[,]" despite the agents' denials of the suspects' requests to leave the interview while the search was ongoing. *Id*.

Here, the circumstances of Defendant's interview are more akin to *Schaffer*, despite the significant length of his interview. Defendant's interview did not take place in a "coercive environment tantamount to formal arrest." *Schaffer*, 851 F.3d at 175. While an interview held within a workplace may be custodial, as *Romaszko* made amply clear, Defendant's interview was not such an instance. In *Romaszko*, the suspect was confronted with handcuffs, weapons, and was never told she was free to leave. 253 F.3d at 759. On several occasions, the suspect was actively prevented from leaving the interview, and expressly told she could not "go anywhere." *Id*. at 760.

Here, Defendant was not once restrained during the interview, or prevented from leaving the conference room. As stated, Defendant was told that the interview was voluntary and that he

---

[3] This request was not determined by the either the district court or the Second Circuit to constitute an invocation of the suspect's right-to-counsel. *Id.*

12

was free to leave. Defendant did not attempt to leave, nor is there any indication from the record that Defendant tried to end the interview. While a number of armed FBI agents were present, no firearms were displayed or brandished during the interview. Despite Defendant's argument that the conference room was "filled with law enforcement," "the number of officers is typically not dispositive" of custody. *Schaffer*, 851 F.3d at 175. While Defendant maintains that he felt "threatened" and "did not feel free to leave" during the interview, Defendant's "subjective belief about [his] status" is not relevant to a custody inquiry. ECF No. 72 at 22; *Faux*, 828 F.3d at 135. Defendant "was not arrested at the conclusion of the interview[,]" and no uniquely "coercive tactics" are alleged to have been employed by the agents. *United States v. Xiaojie Shun*, No. 116-CR-00075-RJA-MJR, 2019 WL 4396237, at *5 (W.D.N.Y. Apr. 10, 2019), *report and recommendation adopted*, No. 16-CR-75-A, 2019 WL 4394242 (W.D.N.Y. Sept. 13, 2019). Rather, Defendant appears to have voluntarily participated in the interview, and discussed several topics with the interviewing agents, without conflict. Based on the totality of the circumstances surrounding Defendant's interview, the Court thus concludes that a reasonable person in Defendant's position would not have "understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Faux*, 828 F.3d at 135. Accordingly, Defendant's motion to suppress statements is denied, and the relevant aspects of the R&R are adopted.

### III.     Motion to Dismiss Counts 1, 2, 5, 6, and 7 of the Indictment

Defendant argues that the Indictment fails to allege that he knew the files he downloaded from Corning were "proprietary." ECF No. 82 at 6. For the reasons below, the Court disagrees.

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment must contain the "elements of the offense charged and fairly

13

inform [ ] a defendant of the charge against which he must defend" and enable the defendant to "plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87 (1974)). "Nevertheless, 'an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992).

"Generally, the indictment does not have to specify evidence or details of how the offense was committed. Simply put, the validity of an indictment is tested by its allegations, not by whether the Government can prove its case." *United States v. Walters*, 963 F. Supp. 2d 125, 130 (E.D.N.Y. 2013) (citations omitted); *see also United States v. Raniere*, 384 F. Supp. 3d 282, 301 (E.D.N.Y. 2019) ("[T]here is a difference between what the Government must prove at trial and what it must plead in the indictment.").

While the elements of an alleged offense can be clarified through recapitulation in a separate section, they are not legally required to be listed in this way. *See United States v. Klein*, 216 F. App'x 84, 88 (2d Cir. 2007) (summary order) (holding that an indictment properly stated an offense, even though one of the elements of the offense was stated in a section headed "Means and Methods of the Conspiracy"); *United States v. Agrawal*, 726 F.3d 235, 261 (2d Cir. 2013) (reading indictment "as a whole"); *United States v. Strewl*, 99 F.2d 474, 477 (2d Cir. 1938) (same). Instead, the Indictment must be read a whole; and if the Indictment, taken as a whole, defines the allegations with enough precision to enable the defendant to prepare a defense, it is legally sufficient. *United States v. Adelglass*, No. 20-CR-605 (JSR), 2022 WL 6763791, at *2 (S.D.N.Y. Oct. 11, 2022).

Here, the Indictment sufficiently alleges that Defendant knew the files were proprietary when he downloaded them, assuming such a knowledge *mens rea* must be alleged. *See Agrawal*, 726 F.3d at 261. As stated, Counts One and Five charged Defendant with Economic Espionage, Copying and Attempt, respectively, in violation of the Economic Espionage Act, 18 U.S.C. § 1831(a)(2) and (4), and Counts Two, Six, and Seven charged Defendant with Theft of Trade Secrets, in violation of the Economic Espionage Act, 18 U.S.C. § 1832(a)(2) and (4). ECF No. 1.

In its Introductory Allegations, the Indictment defined the term "DARPA Laser Fiber Manufacturing Technology" as "a substantial body of valuable business, scientific, engineering, and technical information relating to the development, production, and manufacture of high-power specialty optical fibers[,]" and proceeded to allege that the "DARPA Laser Fiber Manufacturing Technology was proprietary to and owned by Corning and was documented in a series of non-public electronic files held by Corning." ECF No. 1 at 3. The Indictment further alleged in this section, *inter alia*, that "Corning took reasonable measures to protect its intellectual property, including the DARPA Laser Fiber Manufacturing Technology, from unauthorized disclosure and use through various measures and techniques."[4] *Id*. "All research and development work on the DARPA project was confidential and proprietary[.]" *Id*. at 4. The "DARPA Laser Fiber Manufacturing Technology was stored in the electronic files set forth [elsewhere in the Indictment] ("the DARPA Laser Fiber Manufacturing Technology Files") and constituted a trade secret[.]" *Id*.

All relevant Counts incorporated the Introductory Allegations by reference. ECF No. 1 at 8-12. Count One, incorporating the Introductory Allegations, alleged that Defendant "did knowingly and without authorization copy, duplicate and download the DARPA Laser Fiber

---

[4] Those measures included, among others […] [r]equiring employees, including WANG, to execute agreements prohibiting the disclosure and use of proprietary information, except in the course of their official work duties [and] [t]raining employees, including WANG, on the protection and confidentiality of sensitive/proprietary/trade secret information, as well as export-controlled technology." ECF No. 1 at 3-4.

Manufacturing Technology Files, which contained a trade secret, that is, DARPA Laser Fiber Manufacturing Technology." ECF No. 1 at 8. Count Two, likewise incorporating the Introductory Allegations, alleged that Defendant "did knowingly and without authorization copy, duplicate and download the DARPA Laser Fiber Manufacturing Technology Files, which contained a trade secret, that is, DARPA Laser Fiber Manufacturing Technology." *Id*. at 9. Count Five alleged that Defendant did attempt to violate [the Economic Espionage Act], by attempting knowingly and without authorization to steal, appropriate and convey, a trade secret, namely, DARPA Laser Fiber Manufacturing Technology." *Id*. at 11. Count Six, likewise, alleged that Defendant did attempt to violate the Economic Espionage Act by "attempting knowingly and without authorization to steal, appropriate and convey, a trade secret, that is, DARPA Laser Fiber Manufacturing Technology." *Id*. at 12. Count Seven contained the same allegation. *Id*.

As Magistrate Judge Pedersen concluded, the Court finds that Counts Five, Six, and Seven sufficiently allege that the information Defendant downloaded was "proprietary" because each Count alleges that Defendant "knowingly and without authorization" attempted "to steal, appropriate and convey, a trade secret[,]" which was "DARPA Laser Fiber Manufacturing Technology[,]" which the Introductory Allegations make clear was "proprietary to and owned by Corning." ECF No. 1 at 3-12. Counts One and Two, similarly, allege that Defendant "knowingly and without authorization" copied and downloaded the "DARPA Laser Fiber Manufacturing Technology Files," which was previously alleged to have included the DARPA Laser Fiber Technology, a term which, as mentioned, is unambiguously defined as "proprietary." *Id*. at 3, 8-9. These allegations are sufficient to place the Defendant on notice that the Government may intend to prove that Defendant knew the information was propriety when he downloaded the files

16

at issue. *Alfonso*, 143 F.3d at 776. Accordingly, Defendant's motion to dismiss Counts One, Two, Five, Six, and Seven of the Indictment is denied, and the relevant portions of the R&R are adopted.

## CONCLUSION

The Court has reviewed the remaining, unobjected-to portions of the R&R and concludes that they are free of clear error. *See Preston*, 635 F. Supp. 2d at 269. For the foregoing reasons, the R&R is ADOPTED in its entirety and Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: May 21, 2024
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York