UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                        Case # 21-CR-6108

JI WANG,                                                              DECISION AND ORDER

                              Defendant.
_____

## INTRODUCTION

A trial in this matter is set to begin on October 14, 2025. The government has filed a motion *in limine* relating to defense expert Denis Simon, Ph.D. ECF No. 152. Defendant opposes the motion. ECF No. 153. The Court resolves the motion as set forth below.

## LEGAL STANDARD

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). The moving party bears the burden of establishing that the evidence is inadmissible for any purpose and is therefore properly excluded on a motion *in limine*. *Starmel v. Tompkin*, 634 F. Supp. 3d 41, 44 (N.D.N.Y. 2022). A court considering a motion *in limine* may reserve decision until trial, "so that the motion is placed in the appropriate factual context." *Id.* (quoting *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011)). Further, the court's ruling on a motion *in limine* is preliminary, and "subject to change" as the case unfolds. *Luce*, 469 U.S. at 41.

1

## DISCUSSION

Before discussing the motion, some background will be helpful. Defendant is charged with, *inter alia*, economic espionage in violation of 18 U.S.C. 1831(a). *See* ECF No. 1 at 8. That provision provides that "'[w]hoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly' misappropriates a trade secret in one of the ways set forth in the statute, attempts to do so, or conspires to do so, is guilty of a federal offense." *United States v. Zheng*, 113 F.4th 280, 292 (2d Cir. 2024) (quoting 18 U.S.C. § 1831(a)). In *Zheng*, the Second Circuit clarified that the statute does not require "proof of a foreign government's involvement in the defendant's conduct"; a defendant need only "*intend or know* that his misappropriation of a trade secret will *benefit* a foreign government or instrumentality." *Id.* (internal emphases added); *see also id.* at 295 ("[A] volunteer spy is just as guilty as one recruited and handled by a foreign government."). In this context, "benefit" is construed broadly to include not only economic benefits, but also strategic, tactical, or reputational benefits. *Zheng*, 113 F.4th at 295. Furthermore, the defendant's desire to "benefit himself financially" through an unauthorized transaction does not preclude a finding that he also intended "to confer a benefit on a foreign instrumentality," since "[i]ntent to benefit oneself is not mutually exclusive of intent to benefit another." *Id.* at 297.

In order to provide context to Defendant's conduct during the period relevant to the indictment, the government intends to present the expert testimony of Barry Naughton, Ph.D. ECF No. 96. Broadly speaking, Dr. Naughton intends to opine about China's efforts to obtain foreign technology, from the setting of broad goals and policies at the national level to the ground-level implementation of those policies through various state-affiliated entities, like Chinese universities and local governments. Dr. Naughton will opine that the alleged trade-secret information that

Defendant possessed and copied, allegedly without authorization, was the kind of technology that the national Chinese government "sought in connection with its broader strategy of technology acquisition," ECF No. 96-3 at 8, regardless of whether it was "acquired through legal means," *id.* at 7. Dr. Naughton will also provide background information about the entities that Defendant interacted with during his attempt to establish a business venture in China, and those entities' relationships with the national Chinese government. *See id.* at 13-19. Dr. Naughton is of the view that the government-controlled organization with which Defendant contracted would only have done so "with the knowledge and approval" of the national Chinese government. *Id.* at 18-19.

To rebut Dr. Naughton's testimony, Defendant seeks to admit the testimony of Denis Simon, Ph.D. *See* ECF Nos. 141, 154. Dr. Simon agrees with much of Dr. Naughton's testimony concerning China's technology-acquisition policies and its political system, but he believes that Dr. Naughton "overstates the degree of centralized control, coordination, and top-down direction that the Chinese government exercises over local actors [and] state-owned enterprises." ECF No. 154 at 4. That is, while Dr. Simon agrees that Defendant's business venture may have "align[ed] with broad national priorities" like the "development of advanced optical technologies," that mere alignment does not necessarily "prove centralized tasking or control" by the national government in Defendant's proposal. *Id.* at 7. Dr. Simon also disagrees with Dr. Naughton's generalization that the national Chinese government "does not particularly care whether or not the technology" it solicits "is acquired through legal means." *Id.* at 9.

The government has moved to preclude Dr. Simon's testimony, arguing that it would not be helpful to the jury and does not otherwise meet the requirements of Rule 702. ECF No. 152. However, in the Court's view, the government's objection is directed more towards the phrasing of Dr. Simon's testimony than its substance.

Substantively, Dr. Simon's testimony largely tracks the same topics on which Dr. Naughton opines, including China's broad technological and industrial policies, the structure of China's political system, and the mechanisms by which China implements those technology-acquisition goals, including the Thousand Talents Program, local incentive programs, etc. *See generally* ECF No. 154.  As to the substance of those topics, Defendant is correct that "[t]he government cannot have it both ways: it cannot argue that [these subjects are] so complex" as to require "an expert like Dr. Naughton," while "simultaneously arguing that testimony rebutting him" is inadmissible.  ECF No. 153 at 2.  For example, if the government believes it is proper to proffer testimony that the negotiations that took place between Defendant and state-affiliated entities could only have occurred "with the knowledge and approval of" national government officials, ECF No. 96-3 at 19, as a matter of fairness, Defendant ought to be entitled to present expert testimony rebutting such evidence.[1]  *Cf. United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992) (discussing the principle of "opening the door" or "curative admissibility").  More broadly, to the extent that the government, through Dr. Naughton, intends to paint a picture of the Chinese government's efforts to obtain advanced technology, Defendant should be given a similar opportunity to paint his own picture of China's efforts, through Dr. Simon.  As the Second Circuit suggested in *Zheng*, background context about the workings of China's technology-acquisition policies provides a helpful lens through which the jury can discern Defendant's intent in pursuing his business ventures in China.  *Zheng*, 113 F.4th at 295-97.

---

[1] Oddly, though the parties are in agreement that it would confuse the jury to discuss the degree of national-government control over the negotiations in which Defendant was involved, *see* ECF No. 152 at 4 ("Allowing an expert witness to testify about 'direction and control' . . . will confuse the jury"); ECF No. 154 at 10 (same), they both proffer expert testimony opining on that very issue.  *See* ECF No. 96-3 at 18-19 (Dr. Naughton's report); ECF No. 154 at 8 (Dr. Simon's report).  The Court encourages the parties to confer about whether there may be a mutually agreeable way in which to present their respective experts' testimony while minimizing debate about that particular issue.

Still, both sides must take care to avoid phrasing their opinions in ways that intrude upon the jury's or the judge's role. Certainly, Dr. Simon cannot inform the jury about his understanding of the legally correct way to discern Defendant's intent, *see* ECF No. 154 at 8 (suggesting that Defendant's intent should not be inferred from "macro-level policy documents or organizational affiliations"), or about what he believes constitutes "espionage," ECF No. 141 at 5 (stating that "ordinary cross-border networking . . . is not espionage"). *See, e.g.*, *United States v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (improper for expert to couch otherwise valid opinion testimony in judicially defined terms so as to "invade the province of the court to determine the applicable law and to instruct the jury as to that law"). Nor should Dr. Simon opine on what he believes the evidence "proves," "shows," or "establishes." *See, e.g.*, ECF No. 141 at 5 ("Being located in, funded by, or administratively linked to a zone does not, by itself, show . . . a coordinated effort to acquire foreign proprietary technology."); *id.* (stating that benefits provided through the Thousand Talents Program "do[] not establish any bargain to obtain U.S. proprietary information"); ECF No. 154 at 9 (stating that the incentives within the Chinese system to break intellectual-property rules "do[] not establish that any particular individual acted with the intent to engage in illegal conduct"); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's."). Beyond that, however, and assuming their testimony is otherwise admissible, both Dr. Naughton and Dr. Simon may inform the jury about China's politics, economics, and industrial policy. It will be for the jury to decide whether and to what extent that background information assists it in discerning Defendant's intent to benefit China or one of its instrumentalities.

Having laid out these principles, the Court declines to formally rule on the government's motion at this juncture. The parties are expected to ensure that any expert testimony stays within the scope of the witness's expertise and does not intrude upon the judge's or the jury's role. If it comes to pass at trial that either party believes Dr. Naughton's or Dr. Simon's testimony steps beyond its proper scope, the party may raise a contemporaneous objection.

## CONCLUSION

The government's motion *in limine* (ECF No. 152) is resolved as stated herein.

IT IS SO ORDERED.

Dated: October 10, 2025
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York