UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Case # 21-CR-6108-FPG

v.

DECISION AND ORDER

JI WANG,

Defendant.

## INTRODUCTION

On November 4, 2025, a jury found Defendant Ji Wang guilty of economic espionage by copying (Count 1), economic espionage by possession (Count 3), theft of trade secrets by possession (Count 4), attempted economic espionage (Count 5), and attempted theft of trade secrets (Count 6). ECF No. 205. Defendant was acquitted of theft of trade secrets by copying (Count 2) and attempted theft of trade secrets (Count 7). *Id.* Defendant now moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. ECF No. 220. The government opposes the motion. ECF No. 225. For the reasons described below, Defendant's Rule 33 motion is DENIED.

## LEGAL STANDARD

Under Rule 33, a court may vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court "has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and only in 'the most extraordinary circumstances.'" *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be manifest injustice. . . . There must be a real concern that an innocent person may have been convicted." *Id.* Therefore, a reviewing court must be satisfied that

"competent, satisfactory and sufficient evidence" in the record supports the jury verdict. *Sanchez*, 969 F.2d at 1414 (internal quotation marks omitted).

## BACKGROUND

The Court assumes the parties' familiarity with the factual background of this case and will therefore only briefly summarize the facts relevant to this motion. On June 24, 2021, the Grand Jury indicted Defendant on ten counts. ECF No. 1. Three of the counts were dismissed prior to trial. ECF No. 89. The remaining counts pursued at trial were (Count 1) economic espionage by copying in violation of 18 U.S.C. § 1831(a)(2); (Count 2) theft of trade secrets by copying in violation of 18 U.S.C. § 1832(a)(2); (Count 3) economic espionage by possession in violation of 18 U.S.C. § 183l(a)(3); (Count 4) theft of trade secrets by possession in violation of 18 U.S.C. §1832(a)(3); (Count 5) attempted economic espionage in violation of 18 U.S.C. § 1831(a)(4); (Count 6) attempted theft of trade secrets 18 U.S.C. § 1832(a)(4); and (Count 7) attempted theft of trade secrets in violation of 18 U.S.C. §1832(a)(4). *See* ECF No. 1.

Generally speaking, the indictment alleged that Defendant was an employee at Corning Incorporated ("Corning"), who worked on Defense Advanced Research Projects Agency ("DARPA") projects. *Id.* at 1–2. The indictment alleged that on July 1, 2016, Defendant downloaded from Corning's network a copy of a folder containing the DARPA Laser Fiber Manufacturing Technology Files onto a personal USB drive. *Id.* at 7. The indictment alleged that these files contained trade secrets owned by Corning. *Id.* at 4. The indictment further alleged that Defendant and Defendant's business partner used the DARPA files to establish their laser fiber business, which they referred to as Quantum Wave. *Id.* at 5. The indictment alleged that Defendant attempted to negotiate with investors to fund his new company in both China and the United States but was unsuccessful. *Id.* at 6–7.

After a fifteen-day trial, the jury found Defendant guilty on Counts 1, 3, 4, 5, and 6. ECF No. 205. The jury acquitted Defendant on Counts 2 and 7. *Id.* Defendant now moves for a new trial pursuant to Rule 33, arguing that following the jury's verdict, Defendant discovered two categories of evidence that he claims "undermine confidence in the outcome of [his] trial." ECF No. 220 at 1. These new categories of evidence are (1) evidence that the Government's expert witness Department of Commerce Special Agent Thomas F. Smith ("Agent Smith") was the target of a criminal investigation; and (2) statements made by FBI agents after the conclusion of the trial, which Defendant contends undermines elements of the Government's case. *Id.* at 2.

As for Agent Smith, on March 5, 2026, the Government informed Defense Counsel that on February 2, 2026, the United States Attorney's Office for the Western District of New York received a notice that Agent Smith was the subject of an ongoing criminal investigation. ECF No. 220-3 at 1. Specifically, the Government disclosed that on or about April 10, 2025, the Department of State's Office of Inspector General opened an investigation into an employee related to the employee's alleged use of government funds to procure radio equipment for his own personal use. *Id.* In or around May 2025, Agent Smith was identified as a subject in the investigation because he allegedly took possession of the radio equipment at issue. *Id.* On or about May 15, 2025, the Department of State's Office of Inspector General notified the Department of Commerce's Office of Inspector General of the investigation. *Id.* On June 13, 2025, Agent Smith was added as a target of the investigation and his possible violations included making false statements in violation of 18 U.S.C. § 1001, conversion of government property in violation of 18 U.S.C. § 641, and conspiracy to commit honest services fraud in violation of 18 U.S.C. § 1349. *Id.* Additionally, as the investigation continued, the suspected conduct expanded to include possible time sheet fraud, failure to disclose outside employment and income, and tax violations. *Id.* In or around December 2025, the Department of Commerce's Office of Inspector General received notification that Agent

Smith was the subject of the investigation, which had become a criminal investigation in the District of South Carolina. *Id.* On or about December 2, 2025, Agent Smith was notified of the investigation and placed on administrative leave. *Id.* On or about December 2, 2025, Agent Smith retired from his position. *Id.*

As for the statements made by FBI agents after the conclusion of the trial, Defendant submits a declaration from Mr. Joseph P. Indelicato (the "Indelicato Declaration") to support this argument. ECF No. 220-1. In that declaration, Mr. Indelicato explains that he is a member of InfraGard, a partnership between the Federal Bureau of Investigation ("FBI") and members of the private sector dedicated to the protection of the United States' critical infrastructure. *Id.* ¶ 3. On December 12, 2025, Mr. Indelicato attended a meeting for InfraGard members at the Rochester Institute of Technology. *Id.* ¶ 7. At the meeting, a group of FBI agents including Agents Rich Felver, Phillip Tejera, and Jeremy Bell, gave a presentation about Defendant's case. *Id.* ¶¶ 10–11. According to Mr. Indelicato, the agents stated that "a thumb drive containing data had been detected but was not prohibited, and that what the Defendant did was 'not really prohibited' but was monitored." *Id.* ¶ 16. According to Mr. Indelicato, the agents also explained that Corning wanted to stop the process because it believed that the data was valuable but not so valuable that it "wanted to spend the resources to pursue the case." *Id.* ¶¶ 21–22. The agents then explained that they had a meeting with Corning "to convince Corning to continue with the case and stay the course" and that this case was the "most expensive theft of trade secrets investigation the FBI had conducted." *Id.* ¶¶ 19, 22.

## DISCUSSION

Currently before the Court is Defendant's Rule 33 motion, arguing that Defendant is entitled to a new trial based on newly discovered evidence establishing that the Government suppressed material, exculpatory and impeachment evidence in violation of *Brady v. Maryland*,

374 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). ECF No. 220 at 1. As discussed above, Defendant has identified two categories of newly discovered evidence: (1) evidence that the Government's expert witness, Agent Smith, was the target of a criminal investigation; and (2) statements made by FBI agents after the conclusion of the trial. *Id.* at 2. The Court discusses Defendant's arguments as to each category of evidence below.

## I. Agent Smith

Defendant argues that he should be given a new trial because the Government failed to disclose *Giglio* material related to Agent Smith's status as a target of a criminal investigation. *Id.* at 14. In response, the Government argues that Defendant's argument fails because the undisclosed information was not material. ECF No. 225-1 at 2–3. The Court agrees with the Government. "Under *Brady* and *Giglio*, the government's failure to disclose favorable information will result in an order of retrial if the undisclosed information is 'material,' within the exacting standard of materiality established by the governing case law." *United States v. Spinelli*, 551 F.3d 159, 164 (2d Cir. 2008). "While prosecutors have a constitutional duty under *Brady* and *Giglio* to disclose to the defense for use at trial helpful information, including information which impeaches government witnesses, . . . such undisclosed information is deemed material so as to justify a retrial only 'if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). "A reasonable probability of a different result is shown when the government's failure to disclose undermines confidence in the outcome of the trial." *Id.* at 165 (quotation omitted).

"The materiality of undisclosed information which could have served to impeach a government witness is affected by the importance of the witness's testimony, as well as the importance of the disclosed information to the impeachment of the witness." *Id.* "Impeaching information is more likely to be deemed material if the witness whose testimony is attacked

supplied the only evidence linking the defendant[ ] to the crime." *Id.* (quotation omitted). "In contrast, a new trial is generally not required when the testimony of the witness is corroborated by other testimony." *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (quotation omitted). Impeachment information is "only rarely" material. *United States v. Bin Laden*, 397 F. Supp. 2d 465, 514 (S.D.N.Y. 2005).

Under this stringent materiality standard, Defendant is not entitled to a new trial. Defendant argues that the undisclosed information is material because it could be used to impeach Agent Smith, whose testimony established the chain of custody for the hard drive from Defendant's Corning-issued laptop. ECF No. 220 at 16. In substance, Agent Smith testified that he was a forensic agent at the Department of Commerce, that he used Tableau TD2 to generate a fair and accurate image of the hard drive from Defendant's Corning-issued laptop, that he put the image in an evidence server, and that he extracted certain files from the hard drive including the DARPA Laser Fiber Manufacturing Technology Files at issue in this case. *See* Tr. 345–60. Therefore, Agent Smith's testimony was used to establish that Defendant had the DARPA Laser Fiber Manufacturing Technology Files on his Corning-issued laptop.

Defendant argues that if Agent Smith's credibility is undermined, then the integrity of the evidence he testified to is called into question, warranting a new trial. ECF No. 220 at 16. However, there was ample other evidence at trial to corroborate Agent Smith's testimony. *See Payne*, 63 F.3d at 1210. Specifically, Defendant corroborated Agent Smith's testimony when he testified that the DARPA Laser Fiber Manufacturing Technology Files were on his Corning-issued laptop. Tr. at 1145. Defendant also admitted that he downloaded these files onto a personal USB drive and copied them onto his personal laptop. Tr. 1197.[1]

[1] To the extent that Defendant argues that Agent Smith's testimony was used to establish the chain of custody for the hard drive from the Corning issued-laptop, Defendant stipulated to the chain of custody until the hard drive was sent to the Department of Commerce. *See* ECF No. 170. To the extent that Defendant is attempting to argue that Agent

As explained above, a new trial is warranted on the basis of newly discovered evidence only "if there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different." *Spinelli,* 551 F.3d at 164. Here, Agent Smith's testimony was confirmed by Defendant's own admissions at trial, and therefore, there is not a reasonable probability that, had Defendant been aware of the investigation into Agent Smith, the result of the proceeding would have been different. *See id.* Consequently, the undisclosed information is not material, and a new trial is not warranted on this basis. *See United States v. Jones*, 965 F.3d 149, 164–65 (2d Cir. 2020) ("The discovery of new evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial." (quotation and alteration omitted)).

## II. Statements by FBI Agents

Defendant also argues that a new trial is warranted due to the information in the Indelicato Declaration, which he argues is exculpatory and could be used to impeach key Government witnesses. ECF No. 220 at 16–17. Additionally, Defendant moves for an order from the Court requiring the Government to submit a sworn response addressing the specific factual allegations set forth in the Indelicato Declaration, an evidentiary hearing or targeted inquiry to resolve the factual disputes, and for the Court to order an *in camera* review of Government's communications with Corning. *Id.* at 2–3. In response, the Government argues that a new trial is not warranted because the new evidence from the Indelicato Declaration is inadmissible and even if it were

---

Smith's testimony as to the chain of custody after it reached the Department of Commerce is called into question due to the investigation against him and that this warrants a new trial, the Court disagrees. Agent Smith's testimony about the chain of custody was only used to establish that he extracted certain files from the hard drive of Defendant's Corning-issued laptop, including the DARPA Laser Fiber Manufacturing Technology Files at issue in this case. *See* Tr. 345–60. As explained above, Defendant admitted that these files were on his Corning-issued laptop. Tr. at 1145. Because the chain of custody was only used to establish the undisputed fact that Defendant had the DARPA Laser Fiber Manufacturing Technology Files on his Corning-issued laptop, there is not a reasonable probability that, had Defendant been aware of investigation into Agent Smith, the result of the proceeding would have been different, and a new trial is not warranted on this basis. *See Spinelli*, 551 F.3d at 164.

admissible, a new trial is not warranted because the evidence is immaterial and cumulative. ECF No. 225-1 at 18, 20, 22. The Government further argues that there is no need for an order or evidentiary hearing regarding the Indelicato Declaration because even assuming that everything in the declaration is true, a new trial is not warranted. *Id.* at 25. The Court agrees with the Government.

As an initial note, newly discovered evidence must be admissible to warrant a new trial. *See United States v. Parker*, 903 F.2d 91, 103 (2d Cir. 1990). The Indelicato Declaration is hearsay and therefore would be inadmissible at trial. Defendant appears to acknowledge this and only argues that it is relevant for the purposes of impeaching certain witnesses, namely law enforcement witnesses who testified to the purpose of the investigation and Corning witnesses who testified about the value of the trade secrets at issue and whether the download of the files was authorized. ECF No. 220 at 17, 19–21. Defendant does not identify any Rule of Evidence that would allow him to use the Indelicato Declaration to impeach these witnesses. Indeed, the Court is skeptical that he could given that the statements Mr. Indelicato discusses in his declaration were not made by any witnesses in this case and do not directly contradict any testimony. *See* ECF No. 220-1.

Nevertheless, even if the Court were to assume that everything in the Indelicato Declaration were true and could be used at trial to impeach certain witnesses, Defendant would still not be entitled to a new trial. Here, Defendant argues that under *Brady* and *Giglio*, he is entitled to a new trial based on the newly discovered evidence in the Indelicato Declaration. Specifically, he points to the evidence that (1) Corning questioned the value of the trade secrets; (2) Corning wanted to abandon the prosecution; (3) the FBI met with Corning to convince it to continue with the investigation; (4) the FBI spent more money on this investigation than on any other trade secret investigation; and (5) the FBI agents believed that Defendant's conduct was "not really prohibited." ECF No. 220 at 18.

As discussed above, under *Brady* and *Giglio*, the Government's failure to disclose favorable information will result in an order of retrial if the undisclosed information is material. *Spinelli,* 551 F.3d at 164. Newly discovered evidence is material where there is a reasonable probability that, had the newly discovered been disclosed, the result of the proceeding would have been different. *Id.* "A reasonable probability of a different result is shown when the government's failure to disclose undermines confidence in the outcome of the trial." *Id.* at 165 (quotation omitted). None of the evidence in the Indelicato Declaration undermines the confidence in the outcome of this trial and therefore, it is not material.

First, the evidence that Corning questioned the value of the trade secrets is irrelevant and does not support Defendant's argument. The Government was not required to prove the value of the trade secrets at trial. *See* Tr. 1633–97. Indeed, Defendant does not even argue that the Government was required to prove the value of the trade secrets at trial. Instead, he argues that this information was material because the Government was required to prove that the trade secrets had "independent economic value, actual or potential, from not being generally known." ECF No. 220 at 20.[2] Additionally, Defendant argues that Corning's questioning of the value of the trade secrets "bears on the government's proof" that Defendant intended to injure Corning or knew his actions would benefit a foreign government. *Id.*

However, the Indelicato Declaration does not support these arguments. The Indelicato Declaration indicates that "the data was valuable but not so valuable that Corning wanted to spend the resources to pursue the case." ECF No. 220-1 ¶ 22. If anything, that statement seems to support the conclusion that the trade secret at issue had "independent economic value, actual or potential,

[2] To the extent that Defendant argues that this information is material for calculating the appropriate sentencing guidelines, ECF No. 220 at 21, such an argument does not warrant a new trial because it does not undermine confidence in the outcome of the trial. *See Spinelli*, 551 F.3d at 164. Nevertheless, the Court is mindful that this information may be relevant for calculating the applicable sentencing guidelines in this case, and Defendant is free to raise this issue in an appropriate sentencing motion.

from not being generally known," even if there is a dispute about the exact value of the trade secrets. 18 U.S.C. § 1839(3). It also does not undermine the intent element as the exact value of a trade secret does not bear on the intent to injure Corning or benefit a foreign government. As such, the Court concludes that, had the newly discovered evidence been disclosed, the result of the proceeding would not have been different, and a new trial is not warranted on this basis. *See Spinelli*, 551 F.3d at 164.

Second, the evidence that Corning wanted to abandon the prosecution, that the FBI met with Corning to convince it to continue with the investigation, and that the FBI spent more money on this investigation than on any other trade secret investigation is irrelevant. The Government's motivation for bringing this case was not an issue of fact for the jury to decide. Nevertheless, Defendant argues that if he had known of this evidence during trial, then Defense Counsel could have impeached law enforcement witnesses with evidence that the FBI's motivation for pursuing the case was driven by the resources it had committed to the investigation and not the pursuit of justice or national security concerns as the witnesses had testified. ECF No. 220 at 17–18. Defendant further argues that this impeachment would have permitted the jury to weigh whether the agents had a "sunk-cost stake in securing a conviction that colored their testimony." *Id.* at 18. However, the Court concludes that a new trial is not warranted on this basis because Defense Counsel made a similar argument at trial and thus, the newly discovered evidence is not material.

As explained above, "[t]he materiality of undisclosed information which could have served to impeach a government witness is affected by the importance of the witness's testimony, as well as the importance of the disclosed information to the impeachment of the witness." *Spinelli*, 551 F.3d at 164. Further, if the suppressed evidence "is merely cumulative of equally impeaching evidence introduced at trial" and "would not have materially increased the jury's likelihood of

discrediting the witness, it is not material." *Id.* at 165 (quotation omitted). Here, Defense Counsel stated in his closing argument:

> And from there the machine starts rolling, years of FBI agents, search warrants, sting operations, yachts, fancy restaurants, federal prosecutors, good, hard working people, great lawyers, spending years of their lives carrying water for a multi-billion dollar corporation that's not even in this part of the market anymore, all to protect an edge, all that vast power against one guy, because he's got an idea that we are not even sure is going to work.

Tr. 1596. Additionally, the Court instructed the jury that:

> In evaluating credibility of witnesses, you should take into account any evidence that the witness who testified may benefit in some way from the outcome of the case. Such an interest in the outcome creates a motive to testify falsely and may sway the witness to testify in a way that advances their own interests.

Tr. 1623. As such, Defense Counsel already made the argument that the FBI agents may have been motivated by the time, effort, and money that went into pursuing the investigation, and the Court instructed the jury that they could consider this when determining the credibility of those witnesses. Nevertheless, the jury rejected this argument. Any additional impeachment evidence that the FBI agents had an interest in securing a conviction would be cumulative. Consequently, a new trial is not warranted on this basis. *See Spinelli*, 551 F.3d at 165.

Third, the evidence that the FBI agents believed that Defendant's conduct was "not really prohibited" does not warrant a new trial. ECF No. 220-1 ¶ 16. One of the elements that the Government was required to prove at trial was that Defendant acted "without authorization." *See* 18 U.S.C. §§ 1831(a)(2), 183l(a)(3), 1832(a)(3). Defendant argues that the statement that Defendant's conduct was "not really prohibited" warrants a new trial because it is an admission "by members of the investigative team on the precise question the jury had to resolve" as to the "without authorization" element. ECF No. 220 at 20. As an initial note, the Court disagrees with Defendant's argument to the extent that it implies that if Defendant's conduct was not prohibited,

it must have been authorized. Simply put, an admission that Defendant's conduct was "not really prohibited" does equate to authorization of that conduct.

However, even if the Court were to assume that the statement that Defendant's conduct was "not really prohibited" is relevant to the "without authorization" element, a new trial would not be warranted because the newly discovered evidence is not material. As explained above, if the suppressed evidence "is merely cumulative of equally impeaching evidence introduced at trial" and "would not have materially increased the jury's likelihood of discrediting the witness, it is not material." *Spinelli*, 551 F.3d at 165. At trial, the Defense Counsel raised the argument that Defendant's actions were not prohibited by Corning. Specifically, Defense Counsel asked Mr. Anthony Bartone, Corning's Director of Intelligence and Investigations, if Defendant had authorized access to the system at issue to which Bartone replied that Defendant was "an employee of Corning with credentialed network access and then could subsequently access the material." Tr. 200. He added that this did not give Defendant authorization to "download and take material though." *Id.* Defense Counsel also asked Mr. Bartone if the system allowed Defendant to use a USB to download the DARPA Laser Fiber Manufacturing Technology Files to which Mr. Bartone responded "Yes." Tr. 1433. Therefore, Defense Counsel raised the argument that Defendant's conduct was not prohibited and the jury rejected it. Any further evidence that other FBI agents thought that Defendant's conduct is "was not really prohibited" would be cumulative, and a new trial is not warranted on this basis.

Finally, the Court need not make any factual findings as to the accuracy of the Indelicato Declaration because, even assuming that everything in the Indelicato Declaration is true, Defendant is not entitled to a new trial. Consequently, to the extent Defendant's motion requests an order from the Court requiring the Government to submit a sworn response addressing the specific factual allegations set forth in the Indelicato Declaration, an evidentiary hearing or

targeted inquiry to resolve the factual disputes, and for the Court to order an *in camera* review of Government's communications with Corning, the motion is denied.

**CONCLUSION**

For the foregoing reasons, Defendant's Rule 33 motion, ECF No. 220, is DENIED.

IT IS SO ORDERED.

Dated: October 29, 2026

Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York